## CATHARINE BINNERMAN, (formerly CATHARINE WEAVER,) Adm'x *c. t. a.* of CASPAR WEAVER, *vs.* WM. H. WEAVER and GOTLIEB THATER.

A devise, that "my wife shall keep possession of all my property during the continuance of her life, provided she doth stay unmarried," without a bequest over in the event of marriage, will not defeat the life estate of the wife, it being against the policy of the law and in restraint of marriage.

Under the laws of this State, a married woman may act as executrix or administratrix.

A testator directed that his wife should "keep possession of all his estate" during her life, "provided she doth stay unmarried, to take care of the younger children and raise them up until the youngest child is eighteen years of age; but if she should die or get permanently diseased, or in any other way unable to attend to the duties of the will," then he appointed

Binnerman *vs.* Weaver, *et al.*

two other persons "as administrators and guardians of his estate and personal property." HELD:

1st. That the widow was entitled to a life estate in the property embraced in the will, subject to the trusts engrafted upon it in favor of the children.

2nd. Having settled her accounts fully in the orphans court, the jurisdiction of that court ceases, and a court of equity alone can enforce the trusts created by the will.

APPEAL from the Orphans Court for Baltimore city.

This appeal was taken from an order of the orphans court revoking the grant of letters to the appellant and granting letters *d. b. n.* to the appellees, and directing the appellant to pass another administration account recharging herself with $2415.58, which, in her first account, was retained by her as the widow of the testator, and to distribute the same among those legally entitled. The facts of the case are fully stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*Geo. H. Williams* and *Cornelius McLean* for the appellant, argued:

1st. That by the true construction of the will of the testator, the appellant, his widow, is entitled, as tenant for life, subject to the obligation to support the testator's children until they arrive at the age specified; that the condition in restraint of marriage is null and void, and there being no limitation over it, *in terrorem* only, in any aspect of the case. *Story's Eq.*, secs. 287, 289. 6 *Mass.*, 169, *Parsons vs. Winslow.*

2nd. That the time prescribed by our testamentary system having arrived, she distributed to herself, by her first and final account, all the estate of the deceased, which account was ratified by the orphans court; that that court, therefore, has no longer any jurisdiction over the property, and that parties entitled in remainder must seek another *forum* in which to enforce their rights, if any they have; that after a lapse of almost two years, the orphans court had no power to direct the appellant to recharge herself with property, the distribution of which

they had ratified, and that the proceedings were *coram non judice;* the property could not be said to be unadministered.

3rd. Even if by marriage the appellant forfeited her tenancy for life, she did not forfeit her right to remain administratrix; that marriage is not only not a legal disability for such an office, but our testamentary laws recognise and provide for the appointment of married women. And that neither as matter of fact or law did the appellant's marriage render her unable to attend to the duties of the testator's will. And the orphans court, therefore, had no right to revoke her letters. *Act of* 1798, *ch.* 101, *sub-ch.* 4, *sec.* 8, and *sub-ch.* 14, *sec.* 7.

4th. That the estate of the testator having been fully administered, the administratrix still living and there being no evidence of any other assets, the orphans court had no power to appoint an administrator *de bonis non;* no case existed for such an appointment; no act of Assembly specifies marriage as a reason for revocation. *Act of* 1798, *ch.* 101, *sub-ch.* 5, *sec.* 6, and *sub-ch.* 14, *sec.* 14.

5th. That no party is entitled to any relief beyond that he prays for. Here is no prayer for revocation of letters nor for general relief, but only "that she may pass a distributive account, that petitioners may take charge of that portion of the estate to which the children were entitled." The court's decree goes far beyond the relief asked for in the petition.

6th. That as a married woman, the appellant's husband should have been cited and made a co-defendant.

*John J. Snyder* and *Charles F. Mayer* for the appellees, argued:

1st. The right of the appellant to *represent* the personal estate is made, by the will, coordinate with the right to possess the estate for the benefit of herself and *of her children, who are thence to have their support.* When that bequest to her ends her correlative administrative privileges cease. But apart from this, is it not clear that by her marriage she became, in the words of the will, "unable to attend to the duties of the will?" How could she, whilst under the restraints and embarrassments of a husband's control, carry out the will

in its *essential purpose* of sustaining the children, when the very marriage cut off the *resources* which were, by the will, to be used for the support of the children? Her incompetency to perform the duties of the will was thus established by her marriage, and in such an event what was to supervene? The succession of new administrators in the present appellees. It was manifest then to the court, upon the allegations of the petition confessed by the answer, that the powers that had been conferred under a limitation affixed to them by the will had ceased. The court had, therefore, a right, and were even under an *ex-officio* duty, to revoke the administration or declare that the powers of the widow to act as such had ceased. To do this, which was an incumbent duty on the court, needed no prayer in the petition. But there is here what is equivalent to a prayer for such action, for not only does the petition begin with averring the rights of the appellees, but in asking for a distribution account, the object is stated to be, "that the petitioners may take charge of the portions of the estate to which the children are entitled under the will." How could such an investiture of the petitioners be had, unless by superseding the powers of the appellant as administratrix? The administration of the widow was a *conditional* or temporary one. The terms of the will so make it, and executorships of that character are recognised at law, and are, while they endure, not the less potential, because they may, by supervening circumstances or by efflux of time, come to an end. 2 *Shep. Touch.*, 401. *Co. Litt.*, 209, 960, 40. 8 *Coke*, 135, *Sir John Nedham's case.* The administration or virtual executorship of the appellant was here dealt with by the court as thus provisional or transitory.

2nd. If such was the character of the administration to be attached to it in obedience to the will it was to subserve, the jurisdiction of the court to act on the administration seems to follow as an incontestable result. It is not true, that because an account is passed which *implies* that debts are paid, the orphans court's control over the estate ceases. The act of 1798, ch. 101, sub-ch. 10, secs. 6, 10, 11, which speak of accounts showing all debts paid and presenting the estate ripe

for distribution, *reserves the continuous administrative power* for ulterior assets. Whenever, in short, there can arise ground for the court's action within the scope of its ordinary jurisdiction, or for any step concerning its past exercise of jurisdiction, the orphans court may act. 8 *G. & J.*, 226, *Alexander vs. Stewart*. If once administration ceases, *let the cause be what it may*, what is to debar the court from constituting another for any *possible* assets or objects in future to accrue? See also the act of 1798, ch. 101, sub-ch. 10, sec. 11.

3rd. The husband was no necessary party to the petition. Even where administration *issues* to a married woman, it regularly goes to her *alone* and not to her husband conjointly. *Toller's Exc'rs*, 92. *Comyn's Digest, Administrators D.* 3 *Salk.*, 21. Being concerned only *jure alieno*, she is treated as sole in reference to the administration, and her husband is consequently no necessary party to any procedure for enforcing from her an account, or otherwise bearing on her administrative capacity.

4th. But it is said, this devise is, so far as it limits her benefit until she marries again, void as in restraint of marriage. It might suffice to say:—1st. That she is debarred any such objection to the bequest, as she has made her election to abide by the will. 2nd. That the bequest is not merely to the widow, but effectively is to her *and* the children, especially the younger children. 3rd. That the children being thus the principal objects of the provision and *their* interests trenched on *only* so far as the unmarried state of the widow continues, this is the case of a *bequest over* upon the marriage, and it is well settled, that where there is a bequest over, conditions in restraint of marriage are valid. 1 *Roper on Leg.*, 555. 3 *Atk.*, 367, *Wheeler vs. Bingham*. *Bac. Abr., Legacies F.* 2 *Vernon*, 357, *Stratton vs. Grymes*. But it is well settled, that a husband's devise or bequest to his widow, *durante viduitate*, is good as a limitation. 1 *Story's Eq.*, sec. 285. 2 *Vernon.*, 308, *Barton vs. Barton*. 2 *Greenlf's Cruise*, 22, 47. 2 *Wms. Exc'rs*, 914, 918. 2 *Brown's Ch. Rep.*, 488, *Scott vs. Tyler*. 3 *H. & McH.*, 93, *O'Neale vs. Ward.* There is no case contravening this position except that cited

from 6 *Mass.*, 169; but that decision is of no weight, and as thus insignificant against the established principle it is treated by Story and Greenleaf. Again, in *any* case the bequest ceases on marriage when that is assigned as the terminating event, whenever the terms so confining the bequest are to be construed a *limitation*, and not a condition, and no precise words are required for such an operation. The limitation, "until" or "so long as," or any words curtailing the enjoyment and looking to duration, make a limitation. 1 *Roper on Leg.*, 525, 558, 758, 759, and notes. 2 *Wms. on Exc'rs*, 914, 918. 2 *Atk.*, 321, *Richards vs. Baker*. What words could be suggested more directly creating *a limitation* than the words here used, " provided she shall *stay unmarried;*" pointing to the continuance of an existing state—to a termination by an event of a benefit at once entered into? The doctrine of *limitation*, as contradistinguished from condition, under this title of conditions in restraint of marriage, is not peculiar to real estate or *devises*. It is the rule as to *bequests* and the cases cited are of personalty. It is consequently clear, that so far as the interest of the widow, as legatee, is made the measure of determining the scope of her power as administratrix, her authority ceased by her marriage. Upon these considerations we submit, that in form and in substance we are entitled to an affirmance of the decree of the orphans court.

LE GRAND, C. J., delivered the opinion of this court.

The appellees filed in the orphans court for Baltimore city a petition stating, that a certain Caspar Weaver, by his last will and testament, appointed his wife, Catharine, his executrix, with power to take charge of his entire estate, collect rents, &c., until his youngest child should become eighteen years of age, provided she remained unmarried; but that in the event of her marriage, and for other causes mentioned in the will, then the petitioners should act as executors and guardian's of his estate. It further represented that the said Catharine had contracted marriage with one John H. Binnerman; and prayed that the court pass an order " directing her to pass a distributive account, so that the petitioners might take charge

of that portion of such estate to which the children might be entitled.''

The appellant replied to this application, stating that letters of administration had been duly granted to her, and that she had fully settled said estate so far as the orphans court is concerned; and claiming also, that by a proper construction of the will of her testator, she is entitled to the entire estate during her life.

At the hearing of the cause the court revoked the letters of administration granted to the appellant, and granted letters *de bonis non* to the appellees. The court also directed that the appellant should state another account, in which she should recharge herself with the sum of $2415.50, which was in her first administration account retained by her as the widow of the said Caspar Weaver, deceased.

The clause in the will which gives rise to this controversy is in these words:

'' Baltimore, June the eleventh, in the year of our Lord, one thousand, eight hundred and fifty-one, I, Caspar Weaver, *I* know all men by these presents, and make this instrument of writing my last will a testament, as follows: That my wife, (Catharine Weaver,) shall keep possession of all my property during the continuance of her life, *proviting* she *doths* stay unmarried to take care of the younger children and raise them up untill the youngest child is eighteen years of age, and that she shall draw the rents of said property and settle all incumbrances thereon to the best advantage; but if said wife should depart this life or should get permanently deseased, or in any other way unable to attend to the duties of my will, I then select my son, William Henry Weaver, and my son-in-law, Gotlieb Thater, as administrators and as *gardiens* of my estate and personal property.''

On the part of the appellees it is contended, that the true construction of this very singular paper is, that on the marriage of the appellant the letters granted to her ought to be revoked and letters *de bonis non* granted to the appellees.

Under the laws of this State a married woman may act as executrix or administratrix. There is nothing then to dis-

qualify her except it be found in the language of the will. To say the least of it, it is very doubtful whether it was not the intention of the testator only to appoint the appellees in case his wife "should depart this life, or should get permanently diseased, or in any other way unable to attend to the duties" of the will. But be this as it may, it is clear, that the bequest to the wife, during life, without a bequest over in the event of marriage, is not such a bequest as will defeat the life-estate, it being against the policy of the law and in restraint of marriage. It may be said here, as it was in the case of *Evans, et al., vs. Iglehart*, 6 *Gill & John.*, 185, "a life-estate in a chattel may be granted for life to one person, and the same with its issue or increase be limited over to another; but this cannot be done but by express words or necessary implication. Here no such express words are used; no such necessary implication arises."

In any event the appellant would be entitled to her interest, *jure mariti*, and as she has settled her accounts fully the jurisdiction of the orphans court ceases, and a court of equity alone can enforce the trust created by the will, if any such be raised by it.

We are of opinion, however, that the appellant is entitled to a life-estate in the property embraced in the will of her testator, subject to the trusts engrafted upon it. She cannot be required to recharge herself as directed by the order of the orphans court. The settlement already made by her discharges her bond, and if she fails to perform her duty as enjoined in the will the remedy is in a court of equity.

*Order reversed and petition dismissed.*