# KENNEDY v. ALEXANDER.

WILLS; LIFE ESTATES; PRESUMPTION AGAINST INTESTACY; CONDITIONS
        IN RESTRAINT OF MARRIAGE.

1. Where a devise and bequest of real and personal estate are by ex-
   press terms for life, such limitation is not enlarged by a super-
   added power to sell and convey certain parcels of the property in
   fee simple, at the discretion of the devisee, for her support and
   maintenance.
2. Where a testator devises property to his widow for life and provides.
   that in case of her death his daughter shall occupy and fill the
   relation, as to the property, held under the will by his wife, with
   all the rights, powers, and privileges implied or granted to his.
   wife, the daughter takes a life estate, which vests on the death of
   the testator and comes into enjoyment from the death of the
   widow.
3. Every testator in the making of his will is supposed to intend to
   dispose of his entire estate, and the presumption is against his
   intention to die intestate as to any part of it, unless such inten-
   tion is plainly expressed or necessarily implied.
4. All conditions annexed to gifts or devises generally, prohibiting
   marriage, or by which it is unreasonably attempted to fetter or
   restrain marriage, or lead to probable restraint of marriage, are
   void as against public policy.
5. Where the literal effect of a conditional limitation or restriction in
   a will, is to cut down and defeat a pre-existing estate for life or
   in fee, and make it determinable upon the event of marriage, the
   condition or limitation will be regarded as merely *in terrorem*,
   and not allowed to operate a forfeiture of the estate devised or
   bequeathed.
6. A condition in a will which devises property to the testator's widow
   for life and after her death to his daughter, that the daughter
   shall hold the property only so long as she remains unmarried,.
   without limitation over, is an undue and unlawful restraint of
   marriage and void, and the daughter's life estate is left unaffected
   thereby.

No. 1236.   Submitted November 21, 1902.   Decided March 6, 1903.

HEARING on an appeal by the defendants from a decree of
the Supreme Court of the District of Columbia, overruling

a demurrer to and granting the prayers of a bill in equity to construe a will.                                    *Affirmed.*

The COURT in the opinion stated the case as follows:

This case is brought into this court by an appeal from a decree of the Supreme Court of the District of Columbia, passed on a bill filed by the present appellee against the appellants, for the purpose of obtaining judicial construction of certain clauses in the last will and testament of Joseph C. G. Kennedy, deceased. By the decree of the court below the construction of the will asserted and contended for by the complainant was maintained, and the defendants have appealed.

The deceased, Joseph C. G. Kennedy, died in July, 1887, leaving a last will and testament, which was duly admitted to probate. He left considerable estate, both real and personal — part of the real estate being situate in the District of Columbia, part in the State of Maryland, part in the State of Pennsylvania, and part in the State of Texas. He left surviving him his wife, Catharine M. Kennedy, and the appellee, Sarah J. Alexander, Anna E. Bidwell, and Joseph M. Kennedy, his only surviving children, and the appellants, Guy K. Kennedy and Joseph I. Kennedy, his grandchildren, the children of a deceased son, John Kennedy. The son of Joseph M. Kennedy died intestate shortly after the death of his father, unmarried, and his mother, the widow of the said Joseph C. G. Kennedy, died on the 10th day of February, 1897.

The will of Joseph C. G. Kennedy, deceased, was made at the city of Washington, where the testator resided, and bears date the 31st day of July, 1884. By this will the testator devised and bequeathed to his wife, Catharine M., " all of his estate, real and personal, be the same here or elsewhere, — as well as any I may hereafter acquire, — the same to be held for and during her natural life, with full power to sell, dispose of and convey any lot, lots, or parcels of ground here or elsewhere, in fee simple, at any and all

times when it shall appear necessary or proper to her for her maintenance to do so, and she is to determine the time, times, and manner of such conveyance.

"It is my will that in case of the decease of my said wife that my daughter, Sarah J. (so long as she remains unmarried), shall occupy and fill the relation, as to my real and personal estate, held under this will by my wife aforesaid, with *all the rights, powers and privileges* implied or granted to my said wife thereby." He then devises —

"To my son Joseph M. Kennedy T will that during the period of his natural life he shall have and possess the Fountainville property in the State of Maryland in Baltimore and Howard counties, with all the rents, issues and profits thereof — subject to the payment of taxes and necessary repairs — or if he shall prefer, the farm near Meadville, State of Pennsylvania, then and in such case he shall have the option of selection, taking the same with all the responsibilty for taxes and any incumbrances which may exist — to hold one or the other of said places at his option during life,— conditional, however, that he shall occupy and continue to reside on the farm selected by him."

In the next clause of the will, numbered 2, he devises as follows: —

"It is further my will and bequest that so much of my estate as shall remain undisposed of at and after the decease of my wife, son, and daughter, whether real or personal, shall go to and be inherited by such of my grandchildren as may be living, share equally in value, or if none be living and she survive, all the remainder of my estate shall go to my daughter Annie to be held and enjoyed by her, and (should she survive) by my daughter-in-law, Cora W. Kennedy, in case she shall be, and so long as she shall remain the widow of my deceased son, John K. Kennedy — I, however, will that at any time hereafter my wife and daughter, or those of them surviving, may convey in fee simple to my son Joseph any portion of my estate, real or personal, wherein he may have under this will a life interest."

The foregoing are the only material parts of the will that

have any relation to the question designed to be presented in this case. There is no general residuary clause in the will; nothing more than the general limitation of the remainder to the grandchildren, if any surviving, after the death of the wife, son, and daughter.

*Mr. Frederic D. McKenney* and *Mr. John Spalding Flannery* for the appellants:

1. That the words "so long as she shall remain unmarried" are words of limitation and do not constitute a condition in general restraint of marriage has been frequently decided by the courts. *Coppage* v. *Alexander's Heirs,* 2 B. Mon. (Ky.) 313; *Hotz's Estate,* 38 Pa. St. 422. A devise to a person as long as he or she shall remain unmarried is a devise upon a limitation and not upon a condition. Tiedeman on Real Property, § 281. A devise upon a limitation is not regarded as a devise in restraint of marriage, and is not therefore invalid, and the estate thus given is determined upon the marriage of the devisee. *Royal* v. *Smith,* 28 Ga. 262; *Tate* v. *McLain,* 74 Ind. 493; *Hibbits* v. *Jack,* 97 Ind. 570; *Hammett* v. *Jack,* 43 Md. 307; *Bateman* v. *Jack,* 24 N. J. Eq. 70; 2 Jarman on Wills (5th ed.), 49. See also *Bennett* v. *Robinson,* 10 Watts (Pa.), 350; *Harmon* v. *Brown,* 58 Ind. 207.

2. Although a distinction has been made between cases involving a condition with a devise over and conditions without such devise over, the former being sustained but the latter not, it is said that the doctrine that a limitation over is necessary to support a condition in restraint of marriage *refers exclusively to legacies or gifts of personal property.* In that case a forfeiture would result if no succeeding interest were provided for. In relation to real estate, it seems that the same difficulty does not exist, because the heir may at any time enter for condition broken; and it has been directly held that a bequest over was not essential to the validity of a condition precedent in restraint of marriage, even where the property bequeathed was personalty. *Scott* v. *Tyler,* 2 Bro. Ch. 431;

*Knight* v. *Cameron,* 14 Ves. 388; *Hemmings* v. *Munkley,* 1 Bro. Ch. 304; 1 Story's Eq. Jur., Sec. 290. The better opinion seems to be that the refined distinctions attempted to be made in the discussion of conditions precedent and subsequent are more abstract and ingenious than useful and necessary. *Stackpole* v. *Beaumont,* 3 Ves. 96. A thorough discussion of the principles thought to be controlling in cases involving questions such as are presented at bar is to be found in the case of *Mann* v. *Jackson,* 84 Me. 400.

3. It is well settled by strong authority that if the will shows it was the intention of the testator to provide for his wife, daughter, or other female beneficiary so long as she should remain single, but that upon her marriage he expected her husband to support her, a condition that the gift should continue only until the happening of that event is valid. *Herd* v. *Catron,* 97 Tenn. 662; *Denfield, Petitioner,* 156 Mass. 265; *Bruch's Estate,* 185 Pa. St. 194; *Courter* v. *Stagg,* 27 N. J. Eq. 305; *Graydon* v. *Graydon,* 23 N. J. Eq. 229; *Morgan* v. *Morgan,* 41 N. J. Eq. 235; *Bodwell* v. *Nutter,* 63 N. H. 446; *Thayer* v. *Spear,* 58 Vt. 327; *Born* v. *Horstman,* 80 Cal. 452.

4. It is insisted by the appellee that the "absence of a devise over upon the marriage of the daughter is conclusive against the validity of the condition which must be taken to have been *in terrorem* only, and not imperative." But this ignores the proposition that the words charged by appellee to constitute a condition subsequent are not such in fact, but are merely words of limitation or circumscription, the validity of which does not depend upon the presence of a devise over, for Jarman asserts (*supra*) that "no gift over is required to make the restriction in this form effectual." And see *Macy* v. *Sawyer,* 66 How. Pr. 381; *Sisson* v. *Seabury,* 1 Sumn. (U. S.) 235; *Hill* v. *Thomas,* 11 S. C. 359; *Masterson* v. *Townsend,* 123 N. Y. 458; Walworth, Ch., in *Rathbone* v. *Dyckman,* 3 Paige (N. Y.), 27; *Blackwell* v. *Bull* (cited in Jarm. on Wills [6th ed.], p. 535). For a full discussion of the doctrine of implication from de-

vises and bequests on death of a person named, see 1 Jarm. on Wills (6th ed.), Chap. 17, pp. 525, 531 *et seq.*

5. But the suggestion that in the event of holding the words " so long as she remains unmarried " not to be in restraint of marriage, but to constitute a valid limitation, then from the time of marriage of Sarah J. until her death the estate of the testator would be " left in the air," in the language of the court below, can more readily be combatted upon an even stronger ground than either of those above suggested, viz., on the doctrine of acceleration of remainders. This doctrine proceeds upon the theory that if in a series of consecutive limitations a particular estate be void or falls because limited to a person incapable in law to take, or who refuses the same, the remainders immediately expectant on such estate are accelerated and vest at once in the next taker.

As, for example, where a man seized of lands devisable in fee devised to a monk for life, with remainder to a stranger in fee, and then died, the monk being alive but in the then state of the law incapable of taking, it was held that the remainderman took at once. Perkins, 567; *S. C.,* Shep. Touch., p. *435. And so where a testator devised to A. for life, remainder to B., and subsequently revoked the life estate in A., without more, *held* B. took immediately. *Lainson* v. *Lainson,* 18 Beav. 1; *S. C.,* 5 De G. M. & G. 754. The doctrine evidently proceeds upon the supposition that, though the ulterior devise is in terms not to take effect in possession until the decease of the prior devisee, if tenant for life, yet, in point of fact, it is to be read as a limitation of a remainder, to take effect in every event, which removes the prior estate out of the way. Such principle is familiar in its application to the case of an estate for life determined by forfeiture. The doctrine applies to personalty as well as to realty. *Lainson* v. *Lainson, ubi supra; Jull* v. *Jacobs,* 3 Ch. Dec. 703; *Clark* v. *Randall,* 31 Ch. Dec. 72. When a testator by will gives to his surviving spouse a particular estate in property, either expressly or impliedly, in lieu of dower and gives to others remainders in such property dependent upon the determination of the par-

ticular estate given to the spouse, should such spouse elect to take under the law and not under the will, a literal execution of the provisions of the will is rendered impossible, and the beneficiaries in remainder enter into enjoyment at once — in other words, the remainders are accelerated. *Rawling's Est.,* 81 Iowa, 701; *Marvin* v. *Ledwith,* 111 Ill. 144; *Slocum* v. *Hagaman,* 176 Ill. 533; *Allen* v. *Hannum,* 15 Kan. 625; *Small* v. *Marburg,* 77 Md. 11; *Randall* v. *Randall,* 85 Md. 430; *Cunningham's Est.,* 137 Pa. St. 621; *Ferguson's App.,* 138 Pa. St. 208; *Vance's Est.,* 141 Pa. St. 201; 12 Law Rep. 227; *McIntosh's Est.,* 158 Pa. St. 528; *Re Lowman,* 2 Ch. (1895), 348; *Re Hocking,* 2 Ch. (1898), 567. And where a trust is created for the life of the widow for the benefit of the widow and children, upon her death to be paid to the children as they become of age or marry, it is held that the refusal of the widow to take under the will was, for purposes of distribution, equivalent to her death. *Randall* v. *Randall,* 85 Md. 430. Applying this rule to the case at bar, and keeping in view the clear purpose of the testator to provide intermediate support for his single daughter, Sarah J., only so long as she remained unmarried, it would seem that that daughter's election to marry, in so far as the terms of the testator's will providing for the vesting of the remainder in his grandchildren are concerned, was equivalent to her death or decease, and accelerated the bequest in remainder, so that the remaindermen at once, upon the death of the first taker, Catharine M., Sarah J. having previously married, were entitled to enter at once into the enjoyment of the so-called "vanishing remainder."

6. That the opinion and decree of the lower court both contained error is further apparent when they are examined in the light of the opinion of the Supreme Court in the case of *Giles* v. *Little et al.,* 14 Otto (104 U. S.), 291. Although this case, upon the point of *title,* was subsequently overruled by the Supreme Court in *Roberts* v. *Lewis,* 153 U. S. 367, it is to be noted that the subsequent action of the court was based upon the effect of a certain Nebraska statute which

was not considered in the former case, while the general reasoning of that case was left untouched.

*Mr. William J. Miller* and *Mr. Arthur A. Birney* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The will is not by any means artistically drawn; it is greatly wanting in the use of clear and perspicuous terms to express the intention of the testator, and to define with precision the rights that were intended to be conferred upon the beneficiaries of his bounty, in the disposition of a considerable estate. We think, however, with respect to the questions now presented, there is no great difficulty in discovering the testamentary scheme of the testator, as manifested in the several clauses of his will.

There were no answers filed by the defendants to the bill; the facts being undisputed, the question was raised and decided upon a demurrer to the bill. The construction of the will as contended for and alleged in the bill was sustained by the court below, and a decree was passed accordingly. There are two questions presented and necessary to be determined, in order to ascertain what right and estate Mrs. Alexander, the complainant, took under her father's will,—she having married about a year after the death of her father, the testator, and during the lifetime of the widow, the mother of the complainant.

The first of these questions is, what estate did the daughter, Sarah J. (now Mrs. Alexander), take under the first clause of the will, upon the death of her mother, if any? and the second question is, whether the terms *" so long as she remains unmarried "* constitute a condition in restraint of marriage, and therefore void, leaving the estate devised and bequeathed to the daughter unaffected by such condition?

1. The devise and bequest of the real and personal estate to the widow are, by express terms, to her for life, and this

limitation is not enlarged by the superadded power to sell
and convey certain lots or parcels of the property in fee
simple, at her discretion, for her support and maintenance.
But in regard to the next clause, that making a devise and
bequest to the daughter, Sarah J., of all the property un-
disposed of by the widow at the time of her death, there is
no express limitation of an estate, but it is declared that
the daughter, Sarah J. (*so long as she remained unmarried*),
should occupy and fill the relation, as to the real and per-
sonal estate of the testator, held under the will by his wife
aforesaid, *with all the rights, powers, and privileges, implied
or granted to his said wife thereby.*  This language, though
unusual to be employed in a will to limit an estate, where
exact and precise terms should be used, would seem to admit
of but one interpretation, and that is, that the daughter,
Sarah J., should be substituted to the place of the widow,
and was invested with a life estate in the property, with all
the rights, powers, and privileges implied or granted to the
widow.   But this estate, thus vested in the daughter, with
the powers and privileges annexed, is intended to terminate
and be defeated upon the marriage of the tenant for life.
She acquires the estate and will hold it for life, unless she,
at any time during her life, may determine to get married,
upon which event the estate is intended to become divested
and extinct, without any limitation over whatever.   In such
an event what becomes of the estate before the death of the
widow, the son, and the daughter, the event upon which the
remainder takes effect in the grandchildren, if there be such
then living?   Whatever may be the effect of this condition
as to marriage upon the estate given the daughter, we think
there can be no question but that she takes a life estate in
the property devised and bequeathed to her, which became
vested from the death of the testator, and came into enjoy-
ment from the death of her mother, the widow of the testator.

2. But the question next presented is, whether this life
estate in the daughter, Sarah J., with the powers and privi-
leges annexed, is defeated or forfeited by her marriage after
the death of her father, and before she was let into the pos-

session and enjoyment of the estate, though there be no gift over? or is the condition of the marriage of the daughter simply *in terrorem,* and therefore void and without effect to defeat the estate for life?

What constitutes a condition as distinguished from a limitation of an estate, and the effect of the condition if it be one contrary to the established principles or policy of the law, is often a question of some nice discrimination, and hence there is some apparent diversity of opinion upon the subject. The courts have not always been of one opinion as to the precise line of distinction between a condition and a limitation in the devise of an estate.

In the old but authoritative work, known as Sheppard's Touchstone, edition by Hilliard, chapter on Conditions, pp. 132, 133, the doctrine deduced from the old authorities is thus stated:—

" If the matter of the condition tends to provoke or further the doing of some unlawful act, or to restrain or forbid a man the doing his duty; the condition for the most part is void  *  *  *  and hence also it is that such conditions as are against the liberty of law, as that a man shall not marry, or the like, are void, and hence also such as are against the public good.  *  *  *  And in all these cases if the conditions be *subsequent* to the *estate* the condition only is void, and the estate good and absolute; if the condition be precedent, the condition and the estate both are void, for an estate can neither commence nor increase upon an unlawful condition."

The mere use of certain terms that are ordinarily used to express conditions or limitations are not always a sure test of the true nature of the estate devised, but may be taken, in the light of the context with which they are used, as expressing sometimes a condition and sometimes a limitation.

As laid down by Washburn in his work on Real Property, vol. 2, p. 459, the only general rule, perhaps, in determining whether words are words of condition or of limitation, is that when they circumscribe the continuance of the estate, and mark the period which is to determine it, they are

words of limitation; but when they render the estate liable to be defeated, in case the event expressed *should arise before the determination of the estate* they are words of condition. And this accords with the view of the Supreme Court of the United States, as expressed in the case of *Finlay* v. *King,* 3 Pet. 346. It was there said that "there are no technical appropriate words which always determine whether a devise be on a condition precedent or subsequent. The same words have been determined differently; and the question is always a question of intention. If the language of the particular clause, or of the whole will, shows that the act on which the estate depends, must be performed before the estate can vest, the condition is of course precedent, and unless it be performed, the devisee can take nothing. If, on the contrary, the act does not necessarily precede the vesting of the estate, but may accompany or follow it, if this is to be collected from the whole will, the condition is subsequent."

We think, upon the authorities, that it is clear the devise to the daughter is upon a condition subsequent; and the question is reduced to this, whether the condition, " so long as she remains unmarried," operates in restraint of marriage and is therefore void,— leaving the devise and bequest to the daughter for life unaffected by the condition. As will be observed, the condition is general and without qualification; and, as we have said, there is no gift over, upon the happening of the event creating the condition.

Every testator in the making of his will is supposed to intend to dispose of his entire estate, and the presumption is against his intention to die intestate as to any part of it, unless such intention is plainly expressed or necessarily implied. There is nothing on the face of the will before us that justifies the supposition that the testator contemplated intestacy as to any portion of his estate, or that any provision of the will would produce such a result. If he had intended that the devise to his daughter should operate as a limitation of the estate given her, that is, that she should have the estate until marriage, and upon marriage it should terminate,

it is fair to suppose that he would have made a disposition of the estate over after the occurrence of the event of marriage.   But he gave the estate for life, and it is not improbable that he supposed that the condition that he prescribed, that she could hold and enjoy the estate only so long as she might be willing to remain unmarried, would be effectual to keep her in a state of single life or celibacy; and hence he made no devise over to meet an event that he did not suppose would occur.   Otherwise he must have contemplated that from the event of marriage of the daughter to the time of the death of the widow, son, and daughter, when the devise over to the grandchildren would take effect, the estate would remain undisposed of, except as provided by the law of descent and distribution.   He would, as to that interval of time, with respect to the estate devised and bequeathed to the daughter, have died intestate.   This result he clearly did not contemplate in the scheme of his will.

It is certainly true that both by the common law and the civil law, all conditions annexed to gifts or devises generally prohibiting marriage, are void, and where there is an attempt to fetter or restrain marriage by unreasonable conditions, such conditions or restrictions are inoperative and void, as being against public policy, or, as declared by Lord Chancellor Thurlow, in the leading case of *Scott* v. *Tyler,* 2 Wh. & Tud. Lead. Cas. Eq. 429, " they are treated at the same time as unfavorable, and contrary to the common weal and good order of society."   And not only conditions actually prohibiting, but also any such as lead to probable restraint of marriage, are void.   It would seem to be clearly settled, according to the law as administered in the courts of England, that if a condition in restraint of marriage is *general,* and also *subsequent,* then the condition is altogether void, and the party, devisee or legatee, retains the interest given to him or her, discharged of the condition; that is, supposing a gift of a certain duration, and an attempt to abridge or defeat it by a condition in restraint of marriage *generally,* the condition is at least *prima facie* void, and the original gift remains.   *Morley* v. *Rennoldson,* 2 Hare, 571.   And

this will be the case either with regard to a devise of land or the bequest of a legacy. *Ib.;* 2 Wh. & Tud. Lead. Cas. Eq. 188. The law in England upon this subject appears to be somewhat relaxed, according to a few recent cases, wherein it has been held, that a bequest during celibacy is good; but this is founded upon the deference accorded to the intention of the testator.

We have instances of such cases in *Heath* v. *Lewis,* 3 D. M. & G. 954; *Webb* v. *Grace,* 2 Phil. 701; also *Jones* v. *Jones,* 1 Q. B. Div. 279. These cases, as we have said, proceed upon the ground of the clear intention of the testator. But the question of intention is not the controlling element of the case in such gifts. If public policy is to be allowed to have effect, and that is what the general rule is founded upon, both in the common and civil law, the mere form of expression, or the general effect of the restriction of the previous estate given the devisee or legatee, is not material to the result. The general effect is the same, whatever the form of expression may be. As said by Jarman on Wills, vol. 2, p. 573 (5th ed.): "Public policy is equally violated by a condition the natural effect of which is to promote celibacy, whether the testator intended it so to operate or not; but if it is a question of intention, it is certainly more agreeable to general rules to collect that intention from the whole context than to insist on its being manifested by a particular form of words." This is said by Jarman by way of criticism upon the cases to which we have referred, and particularly upon the case of *Jones* v. *Jones, supra.* The language of the court in the case of *Comm.* v. *Stouffer,* 10 Barr (Pa.), 350, is substantially to the same effect. It was there said, that if a restraint on marriage were essentially contrary to the spirit of the English or American jurisprudence, it must be equally invalid, whether put in the form of a condition in avoidance of the vested bequest, or of a limitation enduring only so long as the legatee should remain unmarried. For, in either case, the effect is the same, and the legatee is compelled to choose between remaining unmarried and forfeiting the legacy." It would seem, therefore, that in case

of such conditional limitation or restriction, the literal effect of which is to cut down and defeat a pre-existing estate for life or in fee, and make it determinable upon the event of marriage, the condition or restriction should be regarded as merely *in terrorem,* and therefore should not be allowed to operate a forfeiture of the estate devised or bequeathed.

The modern doctrine of the English courts upon this subject, as in some respects modified by the preponderance of American decisions, is very fully and clearly stated by Mr. Justice Story, in his work on Equity Jurisprudence, in sections 276 to 291. In section 280 the learned author says:—

" The general result of the modern English doctrine on this subject (for it will not be found easy to reconcile all the cases) may be stated in the following summary manner. Conditions annexed to gifts, legacies, and devises, in restraint of marriage, are not void, if they are reasonable in themselves, and do not directly or virtually operate as an undue restraint upon the freedom of marriage. If the condition is in restrain of marriage *generally,* then, indeed, as a condition against public policy, and the economy and morality of domestic life, it will be held utterly void. And so, if the condition is not in restraint of marriage generally, but still the prohibition is of so rigid a nature, or so tied up to peculiar circumstances, that the party upon whom it is to operate is unreasonably restrained in the choice of marriage, it will fall under the like consideration. Thus, where a legacy was given to a daughter, on condition that she should not marry without consent, or should not marry a man who was not seized of an estate in fee simple of the clear yearly value of £500, it was held to be a void condition, as leading to a probable prohibition of marriage." And in section 287 the author says:

" One distinction is, between cases where, in default of a compliance with the condition, there is a bequest over, and cases where there is not a bequest over, upon a like default of the party to comply with the condition. In the former case the bequest over becomes operative upon such default, and defeats the prior legacy. In the latter case (that is,

where there is no bequest over), the condition is treated as ineffectual, upon the ground that the testator is to be deemed to use the condition *in terrorem* only, and not to impose a forfeiture, since he has failed to make any other disposition of the bequest upon default in the condition." See cases cited in support of the text quoted.

Without referring to the numerous cases upon the subject, we shall, for the purpose of showing the various terms employed by testators, which have been construed to operate in restraint of marriage, refer to a few American cases where the question has been considered. In the case of *Otis* v. *Prince,* 10 Gray, 581, a testator devised real estate to his grandson in fee, and by a codicil directed the estate to be held in trust to pay over to him quarterly the net income of said estate, *so long as he shall remain unmarried;* and, in the event of his marriage or his dying unmarried, to convey the estate to his heirs. It was there held that this devise operated a restraint upon marriage and was against the policy of the law, and that the gift or devise over was void. In the opinion delivered by Judge Thomas, it was said: "By the original will the estate is given to the plaintiff in fee simple. The codicil devises the estate in trust to pay the net income to the plaintiff so long as he shall remain unmarried, and, in the event of his marriage or dying unmarried, to convey it to his legal heirs.

"The condition is subsequent, and the restraint upon the marriage of the grandson is without limitation as to time or person. It is therefore clearly against the policy of the law, and void, unless there is *a valid gift over;*" citing *Parsons* v. *Winslow,* 6 Mass. 169; *Lloyd* v. *Branton,* 3 Meriv. 108; *Morley* v. *Rennoldson,* 2 Hare, 571; 1 Jarman on Wills, 843; 1 Sto. Eq. Jur., Secs. 280, 288.

In the case of *Maddox* v. *Maddox,* 11 Gratt. 804, it was held that "where a condition is in restraint of marriage generally, it is deemed to be contrary to good public policy, at war with sound morality, and directly violative of the true economy of social and domestic life. Hence such a condition will be held utterly void." The same principle has been

fully recognized and announced in the case of *Hogan* v. *Curtin,* 88 N. Y. 162, 171. In that case it was held that a condition prohibiting marriage before 21, without consent, is by the common law valid and lawful. But that it is otherwise of conditions in general restraint of marriage, they being regarded as contrary to public policy and the common weal and good order of society.

In the case of *Waters* v. *Tazewell,* 9 Md. 291, there was a deed conveying leasehold property in trust for the sole and separate use of a *feme covert*. It contained a provision that in case the husband should survive the wife, he and his assigns should have the rents, issues, and profits " *during his natural life only,* to and for his own use and benefit, *provided he should continue unmarried;* after the death of his wife then living, and from and immediately after his decease," then over. It was held that this proviso was in general restraint of marriage, it being a condition subsequent, and was therefore void, and the husband's life estate was not terminated by a second marriage.

The same principle is maintained in the previous case of *Binnerman* v. *Weaver,* 8 Md. 517. And to the like effect are the cases of *Randall* v. *Marble,* 69 Me. 310, and *Stilwell* v. *Knapper,* 69 Ind. 558. See also 2 Pomeroy Eq. Jur. 441, and note.

Without referring to other authorities, upon the construction of the will of Joseph C. G. Kennedy, deceased, we are clearly of opinion that the devise and bequest to the daughter of the testator, after the death of the widow, created a vested life estate in the daughter, and that the condition that she should hold the estate only so long as she remained unmarried, without limitation over, was an undue and unlawful restraint of marriage, and therefore void; leaving the life estate devised and bequeathed to the daughter, Sarah J., now Mrs. Alexander, unaffected by the condition or restriction. It follows, therefore, that the decree of the court below must be affirmed; and it is so ordered.          *Decree affirmed.*