## Williams *v.* Brice, Appellant.

*Will—Devise—After acquired real estate.*

Where a testator devises to his sister all the residue of his real estate described as a one-sixth interest in real estate "inherited from his father," and after the execution of his will he acquires by inheritance and purchase from his brothers additional interests, so that at the time of his death he owns a one-fifth undivided interest in the real estate which had belonged to his father, the whole undivided one-fifth interest passes to the sister under the testator's will.

Argued Jan. 15, 1902.   Appeal, No. 351, Jan. T., 1901, by defendant, from judgment of C. P. No. 5, Phila. Co., March T., 1901, No. 354, for plaintiff on case stated in suit of Mary C. Williams v. Philip H. Brice.   Before McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Case stated to determine the title to real estate.

From the record it appeared that Mary C. Williams contracted to sell to Philip H. Brice for the consideration of $175,000, an undivided two-fifths interest in certain real estate in Allegheny county, Pennsylvania.   The defendant claimed that as to one thirtieth of the real estate plaintiff had no title. Further facts appear by the opinion of MARTIN, P. J., which was as follows:

The will of Thomas Williams, Jr., dated May 31, 1889, gave to his sister, Mary C. Williams, the whole of his personal estate, and further provided : " I hereby give and bequeath to my

four sisters, Margaret D. Williams, Agnes W. Pemberton, Sarah D. Williams and Mary C. Williams, and my brother, Richard A. Williams, who are tenants in common with me of the four brick houses and lot on the corner of Market and Liberty streets, Pittsburg, Pa., the fractional ground rent of ninety-seven 24–100 dollars per annum to the end that the same may be merged in the fee and pro tanto extinguished. I also give and devise to my sister, Mary C. Williams, all the residue of my real estate consisting of the (1–6) one-sixth part of the following properties, inherited from my father, Thomas Williams, to-wit: " (describing the properties) " to have and to hold to herself, her heirs and assigns forever," subject to the payment of certain annuities. She was named as executrix in the will, which directed that she should not be required to file any account.

Testator died on November 11, 1894. At the date of the execution of the will he was seized of an undivided one-sixth interest in the properties, but subsequently acquired by purchase and inheritance interests, which increased his holding to a one undivided fifth interest. No change was made in his will.

The question to be determined is whether the one-thirtieth interest acquired after the date of the will passed under its terms, or did Thomas Williams, Jr., die intestate of that portion of his estate?

" In the consideration of wills it is the duty of the court, in the first place, to ascertain from the words used by the testator what his meaning was, and to give effect to that meaning if words are to be found sufficient for the purpose: "MALINS, V. C., in Smyth v. Smyth, L. R. 8 Ch. 563.

There are two rules of construction applicable to this case furnished by the Act of April 8, 1833, sec. 10, P. L. 249, which enacts that " the real estate acquired by a testator after making his will, shall pass by a general devise, unless a contrary intention be manifest on the face of the will; " and the Act of June 4, 1879, sec. 1, P. L. 88, which provides that " every will shall be construed with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless the contrary intention shall appear by the will." ·

The field of inquiry in which the intention of testator is to be sought may be further restricted in this case by the maxim that no presumption of an intention to die intestate as to any part of his property is allowable when the words used by the testator may fairly carry the whole: Schouler on Wills, sec. 490.

The rule which protects the heir at law against being disinherited by conjecture cannot weigh, where, as in this instance, it was the clearly expressed intention of the testator at the date of making the will to exclude him, and no change occurs in the will during the balance of testator's life.

It was said by Judge PENROSE, one of the most eminent jurists in this branch of learning: " The object of the statute (June 4, 1879), was not to affect the construction of the language of the testator so much as to prevent an intestacy as to any part of his estate : " Fidelity Insurance Trust & Safe Deposit Co.'s Appeal, 108 Pa. 492, 494.

In the absence of direct authority the English decisions upon closely analogous cases are of value in determining the question at issue, in view of the fact that the act of 1833, relating to after-acquired real estate is in its provisions similar to section 23 of the Wills Act, of 1 Vict. Ch. 26 ; and the act of 1879, providing that wills shall take effect as if executed immediately before the death of testators is in the words of the twenty-fourth section of the Wills Act.

Many of these cases have been cited with approval by the Supreme Court of Pennsylvania.

In Bridges v. Bridges, 8 Vim. Abr. 295, pl. 13, testator gave " the remainder of my estate, viz : my bank stock, India stock, South Sea stock and South Sea annuities to my son."

The court was of opinion that the latter words, which came under the videlicet, did not restrain the general words precedent (the remainder of my estate), but were added by way of enumeration or description of the main particulars of which his estate did consist, and not to restrain the word (estate) to those particulars.

In Chalmers v. Storil, 2 Vesey & Beame's Rep. 221, Sir WILLIAM GRANT, master of rolls, used the following language : " The testator gave all his estate whatsoever, real or personal, to be divided between his wife and children. The subsequent enumeration of the articles of which he supposed his property

to consist does not limit the gift to the particulars specified. Intending to give everything he could, he has incorrectly stated what he had. Here the testator disposes of the whole of his personal estate, and therefore does not mean to die intestate as to any part of it."

In King v. George, L. R. 4 Ch. Div. 435, subsequently affirmed on appeal (see L. R. 5, Ch. Div. 627), the vice chancellor said: " To my mind it is clear that the testator did not intend to die intestate as to any part of her property, but that she intended by the use of the words ' All that I have power over ' to give all her property of every description, and then foolishly and unnecessarily proceeded to enumerate part of them. Then, applying the rule in this case that the first duty of the court is to ascertain what was the intention, and then having done that, to say whether there are words to carry that intention into effect, I am satisfied the intention was to dispose of all her property, and I am of opinion both upon principle and authority that the words are sufficient for the purpose.

" This subject where wills are made in comprehensive form followed by an enumeration, has been a subject of difficulty to judges for the last century and a half, and amongst the most learned of them there has been a remarkable difference of opinion. But I cannot help thinking that the doctrine has been settled that where a testator gives his property generally by the words ' All my property ' or ' All my estate ' or ' All that I have power over,' as in this case, where he uses words sufficient to pass everything, and then proceeds to enumerate particulars—it is now, I think, pretty well settled that the enumeration of particulars does not abridge or cut down the effect of the general words."

In Smyth v. Smyth, L. R. 8 Ch. 563, the court used the following language: " My opinion is that the testator could not have intended to die intestate, but he intended to dispose of everything he had in the world. I believe in using the words ' All the rest and residue ' he meant the rest and residue of everything, that is, all the property of every description which he had not already given away. Then he adds ' money chattels, and all my other effects.' It has been argued that the word ' effects ' will not pass real estate. Why it should not I cannot tell, but I certainly do not agree with the argument.

" Now as regards the earlier cases, I have expressed my opinion that these cases, although decided by great judges, were decided at a time when there was that extraordinary leaning in favor of the heir at law.   I believe, however, that they are not now considered as authorities, and I unhesitatingly express my opinion that they are no longer law.   The decisions in more recent times have been very different and are much more liberal in the construction of wills."

The principle is well illustrated in the case of Russell v. Chell, L. R. 19 Ch. Div. 432, where testator owning a one-third interest in a partnership business at the date of executing his will bequeathed it in trust for his wife.   He subsequently acquired the interests of his brothers in the business and at the time of his death was the sole owner.   It was held that the wife was entitled to the whole income.   Vice Chancellor BACON said : " The court leans against intestacy in all cases, not from compassion, but as a fixed principle of law.   The law is opposed to intestacy ; and the Wills Act proceeds exactly upon this principle, though not recognizing it in terms. . . . In this case the testator having a one-third share at the time when he made his will in 1857, by a series of accidents, which I need not describe, became entitled to the entirety.   One of the results is that by the purchase of the other shares the testator's share has become increased. . . . Then inasmuch as he has said : ' I, being a manufacturer in partnership give all my interest in the partnership to my wife, including one third of the capital, one third of the profits, one third of the buildings and stock in trade and so on,' enumerating them particularly, because he afterward becomes possessed of a larger interest than one third, it is said that the interest which passed by his will is confined to that one third which he had in the year 1857, and is not to comprehend the interest which he had in 1881 when he died.   In my opinion that would be a very violent construction.   It is clear that it would disappoint the intention of the testator. . . . In my opinion the twenty-third section of the Wills Act has direct application, and I hold that the acquisition of a larger interest does not affect in the slightest degree the disposition which the testator made of all the interest which he had in the houses, chattels and other property in the copartnership business, although the partnership

had ceased to exist, and he had become the sole owner of the property."

In Dickinson v. Dickinson, L. R. 12 Ch. Div. 22, testator used the words: "All my leasehold houses, land and premises situate at Chesterwood (charged, nevertheless, with the payment of all mortgage debts charged thereon, and also with the payment of an annuity of nine pounds now charged thereon").

At the date of his will testator was possessed of two leasehold properties situate at Chesterwood, one of them subject to a mortgage, and the other charged with the annuity of nine pounds. Between the date of his will and the time of his death the testator purchased another leasehold property situate at Chesterwood.

Lord Justice JAMES held that the after-acquired leasehold property passed under the bequest.

In re Midland Railway Co., 34 Beav. 525, a will dated in 1849 devised " all that messuage or dwelling house situate in Bordgate wherein my son now resides." Testator subsequently to the date of his will purchased a copyhold piece of adjoining land, which he converted into a garden for the house. He died in 1851, at which time the son remained in occupation of the whole of the premises. Sir JOHN ROMILLY, master of rolls, said: " The question is whether this copyhold garden passed under the devise, and I am of opinion that it did." After quoting the words of the section of the Wills Act, he added: " The burden of proof lies, therefore, to show that it did not pass, and this from the will itself. I think the word ' now ' is solely descriptive of the messuage. . . . It is merely descriptive of the subject-matter of the devise, and not used as confining the extent of the devise."

In Saxton v. Saxton, L. R. 13 Ch. Div. 359, by a will made in 1876, a term in a leasehold was given to the widow subject to the payment of rent and performance of covenant. The following year testator purchased the fee. He died without altering his will. It was held that the twenty-fourth section of the Wills Act made the will speak from the death, and that it passed the house for whatever interest he had in it. This case followed the earlier decision of Miles v. Miles, L. R. 1 Eq. 462, in which a will made in 1862 devised " all that my messuage, partly freehold and partly leasehold, No. 3 Canon

street." Testator subsequently purchased the reversion, but died without changing his will, and Lord ROMILLY said: "It was his clear intention that the whole messuage should go to the specific devisee. The description was an accurate one at the time his will was made, and after the purchase of the revision he did not think it necessary to describe it again." To the same effect is the decision of Struthers v. Struthers, 5 W. R. 809, in which testator gave leaseholds for the residue of the terms, and it was held that the will operated to pass the fee subsequently acquired.

In the present case, considered under the light of these authorities, there are no words in the will of Thomas Williams, Jr., indicating an intention that after-acquired property should not pass by the general devise to his sister of "all the residue of my real estate;" nor are there any words showing that he had in contemplation at the date of the will the further acquisition of other shares in the property devised.

It, therefore, seems clear that Mary C. Williams takes the entire interest in the property owned by Thomas Williams, Jr., at the date of his death; and that the added words of description which were applicable at the period when the will was made, but did not embrace the subsequent acquisitions, do not on principle or authority indicate an intention that she should not have it.

An examination of the authorities cited in support of the theory that Thomas Williams, Jr., died intestate of the one-thirtieth interest in the property in question shows that they do not affect the principles established by the authorities heretofore referred to.

In Fidelity Insurance Trust & Safe Deposit Co.'s Appeal, 108 Pa. 492, there was a specific bequest of eighty-one shares of stock "now standing in my name on the books of the company." The stock specified was subsequently surrendered and other shares taken in lieu thereof. It was held to be a clear case in which testator did not intend that her will should speak as of the time immediately preceding her death. See opinion of PENROSE, J., 108 Pa. 494.

In Baker's Appeal, 115 Pa. 590, it was held that the terms of the will clearly indicated the intention of the testator to dispose of certain property, and that in the absence of an am-

biguity extraneous evidence could not be received to show that he had other property to which the will might apply.

Enohin v. Wylie, 10 House of Lords Cases, 1, is explained in the opinion of Vice Chancellor MAHLINS in the later case of King v. George, L. R. 4 Ch. Div. 435, 444, affirmed on appeal, L. R. 5 Ch. Div. 627, in which he states that case to have been decided upon the clearly expressed intention of the testator to dispose of his Russian property only, that he was directing a disposition of only that property, and restricted the will to it, and not upon the question of defective enumeration.

In Leach v. Jay, L. R. 6 Ch. Div. 496, JESSELL, M. R., said in construing a will without other context, where there was a devise of real estate of which testator might die seized: " In this particular will the testatrix, for what reason I know not, used a technical word, a word not only technical, but a word that has no significance in ordinary language at all. It is a purely technical word, and it appears to me that the whole of my duty consists in ascertaining whether she was, at the time of her death, 'seized' according to the technical meaning of that technical term of this real estate."

Howe's Appeal, 126 Pa. 241, was a decision that upon the plain words of a will in the absence of ambiguity there was no occasion to refer to interpretation.

Judgment for plaintiff in the sum of $175,000.

*Error assigned* was in entering judgment for plaintiff.

*George C. Bowker*, for appellant.

*John G. Johnson*, with him *William Wilkins Carr*, for appellee.

PER CURIAM, February 24, 1902:

The judgment in this case was entered for the plaintiff in the sum of $175,000 and is affirmed on the opinion of Judge MARTIN.