**FAIRCLAW v. FORREST.**
No. 7909.

United States Court of Appeals for the
District of Columbia.

Decided Aug. 4, 1942.

Mr. Philip W. Thomas, of Washington, D. C., with whom Mr. Thomas W. Parks, of Washington, D. C., was on the brief, for appellant.

Mr. Richard E. Shands, of Washington, D. C., for appellee.

Before STEPHENS, VINSON, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

At her death in January, 1939, Mable Pryor owned real estate in Washington known as 120 U Street Northwest. The only question is whether this property passed by her will to appellee, her brother and residuary legatee, or descended as intestate property to him and her niece, the appellant, as heirs at law. The trial court dismissed appellant's complaint to have the will construed in her favor and the property partitioned. We think this was right.

In 1926 the property was conveyed to Mable Pryor and her husband, Harry C. Pryor, as joint tenants in fee simple. They remained so seised until he died in 1933. From that time she continued as sole owner until her death in 1939. Her only surviving heirs were appellant, appellee and another brother, Samuel Forrest, who died in June, 1939. Appellant and appellee have succeeded to his estate as his heirs.

Mable Pryor's will was executed in 1928. It was not changed thereafter or republished. After specific bequests, the will provided:

"Seventh, I have purposely excluded my husband from any benefits under this my Last Will and Testament for the reason that *all of the real estate in which I am interested is* held in joint tenancy between him and me, and all of my earnings for the past twenty-five years have gone into said real estate, which will go to him in the event he survives me;

"All the rest and residue of my estate, *both real*, personal and mixed, I give, devise and bequeath to my brother, John Forrest, to him and his heirs and assigns forever, share and share alike, as tenants in common." (Italics supplied)

At her death Mable Pryor was sole owner of the premises. The residuary clause is broad enough to include them and all other property not otherwise disposed. Nothing in the will excludes the U Street property or indicates intention to do so. On the contrary, it purports to make complete disposition of her estate. She provided for payment of debts and funeral expenses. She made specific bequests. In these she was generous to appellant, then Mable Swales. She purposely excluded her husband and stated the reason. Then she gave appellee all her remaining property, including realty. The will leaves no room to infer she intended anything to pass as intestate estate.

No such intention concerning this property can be drawn from the item excluding her husband. The purpose was to show that other provision for him had been made. For twenty-five years testatrix' earnings had gone into realty they held jointly. She had no other real estate. There is nothing to show she expected to acquire or hold any in sole ownership, except by surviving him. There were two contingencies, therefore, in light of which the will was drawn,

not merely one as appellant contends. One was that the husband would survive the wife. In that event by right of survivorship he would become sole owner. The property would not pass under the will. But all other, whether real or personal, would go according to the testamentary disposition. The other contingency was that the wife would survive the husband. In that case she would become sole owner of the realty and upon her death it would fall into the residuary estate. Considering the situation in which the will was drawn, it is fair to conclude that the very purpose of mentioning realty in the residuary clause was to bring within the residuary estate and devise to appellee the premises in question, as well as any the testatrix might acquire in sole tenancy by surviving her husband or otherwise. She had no other realty. In view of her lifetime practice, it was improbable she would become sole owner in any other way. From the fact the will could not dispose of this property in case of the husband's survival, it does not follow she intended it should not do so if she should survive. The husband, not the property, was excepted from the will's provisions. So far as intention and its testamentary expression could accomplish it, the premises were devised to appellee.

The will was executed after the testatrix and her husband acquired the property and before his death. From this fact appellant erects two arguments. One is that the intention to devise did not exist, the other that it cannot be given effect. The former is actually a version or variant of the latter, to which we therefore turn.

Counsel ably presents appellant's thesis in a series of syllogisms based upon the common-law unity of husband and wife and its particular, perhaps extreme, expression in the tenancy by the entirety. Briefly, the argument is as follows.

The conveyance to Harry and Mable Pryor made them tenants by the entirety. Settle v. Settle, 1925, 56 App.D.C. 50, 8 F.2d 911. Her will, executed while this estate continued, could not devise it. Harry Pryor's death gave her no new estate or right of property. It merely freed the realty from his participation, and she continued to own and be possessed of the entire estate, not by virtue of any right or interest acquired as survivor, but by virtue of the original grant. The will speaks concerning the realty it purports to devise as of the date of its execution or republication, not as of the time of death unless a statute provides the contrary. McAleer v. Schneider, 1894, 2 App.D.C. 461; Bradford v. Matthews, 1896, 9 App.D.C. 438, 442. There is no applicable statute here, where the will was made after the property was acquired. Section 45 of Title 29, D.C.Code (1929) [Section 19—205, D.C. Code (1940)], provides only for the passing of after-acquired property by general words of devise. No property here was after-acquired because by the death of Harry Pryor the testatrix acquired no new or additional interest within the section's meaning. If her intention is material, she must be presumed to have known the law (as counsel states it) and therefore intended the property to descend intestate. Section 45, upon which much of the argument is constructed, in material part is as follows: " * * * any will executed after Jan. 1, 1902, which shall by words of general import devise all the estate or all the real estate of the testator shall be deemed, taken, and held to operate as a valid devise of any real estate acquired by said testator after the execution of such will, unless it shall appear therefrom that it was not the intention of the testator to devise such after-acquired property."

Appellant's argument may be stated in two ways. One is in terms of an interest in realty which is not alienable, hence not devisable. In other words, the will is inoperative to devise the property because neither tenant had an interest capable of being transferred during the existence of the tenancy. Hence, as to the interest which each had, though it included the entire estate, the will or other instrument of alienation was void. In this conception, discussion of Section 45 and after-acquired property is beside the issue. The defect in the will is not want of after-acquisition, but want of devisable interest or estate. It is immaterial whether the property is pre- or after-acquired.

The other conception casts the argument in terms of after-acquired property. This involves two prongs, first, that the testatrix acquired the entire estate and every interest capable of transfer by virtue of the original grant which created the tenancy and was made before the will was executed; second, she acquired nothing which the will could transmit by virtue of her husband's death. It is not denied that

after the death of one the survivor stands in a different relation to the property than before it. Instantly it occurs, he may sell, mortgage, encumber, devise or give it away. His heirs may take it as intestate estate. He has, and can exercise, all the rights of an owner in fee simple, whereas beforehand he was limited to use and possession, with possibly some contingently effective powers. Yet all this is attributed to the original grant. Death is the mere contingency which makes it effective. It is not of itself an event of transmission or creation, as it is in almost every other context of descent or devise. Consequently all the death does is to "free the estate from the decedents' participation"; the survivor "acquires no new estate or interest," but "continues merely to hold and be possessed of the entirety from the date of the original grant." There is no "new devisable interest," hence no after-acquired property. Such is the potency of words.

Appellant, however, admits that the property would pass under the will (1) if the original grant had been made *after* the will was executed; or (2) if the will had been executed or republished after the death of the husband. Only when it is executed during the continuance of the entirety is it inoperative. The concession, we think, nullifies the argument.

If the interest of a tenant by the entirety is not devisable or alienable, it is so because that is an incident of the estate, not because the will is made before or after the grant which creates the tenancy. Yet appellant concedes the interest is devisable if the will is executed before the grant is made. This she does in view of Section 45. It cannot be denied that the testatrix acquired an estate in the property, whether by the grant, by the death of her husband, or by both. Hence appellant is forced to concede the section would apply if the will had been made first. Then acquisition of the estate would have made it "after-acquired" property, and the section provides in such a case that a will "which shall by words of general import devise all the estate or all the real estate of the testator shall be * * * held to operate as a valid devise of any real estate acquired by said testator after the execution of such will * * *." Appellant thus in effect concedes that the interest of such a tenant is devisable.

▆ If that is so, we do not see how the section can aid appellant. Upon that assumption, she is caught in the dilemma stated by appellee. On the one hand, if, as appellant contends, the testatrix acquired her entire estate and interest by virtue of the original grant, she was seised of it when she made the will, it was not "after-acquired," the section has no application and the estate, "freed" from the husband's "participation" by his death, passed by the terms of the will to appellee. If, on the other hand, she acquired an additional estate or interest by her husband's death, this was "after-acquired," the section applies, and appellee likewise takes the property under the will. Appellant's fallacy is in assuming that the section makes the estate or interest devisable, depending upon whether the execution of the will precedes or follows the grant. If the interest is devisable by a precedent will it is also by a subsequent one, and the only question is whether it is to be given effect as to property previously acquired or "after-acquired." In view of the statute the answer to that question is no longer material upon a devise of this character. The purpose of the section was not to change the nature of estates from inalienable or non-devisable to devisable ones. It was to make general words of devise effective without reference to the time of acquisition of property.

The crucial issue is whether the interest of a tenant by entirety is devisable when the will is executed before he takes by survivorship. We now turn to that question.

▆ Next to primogeniture, unity of husband and wife was perhaps the common law's most characteristic institution. Tenancy by entirety epitomized the idea. Uniting the conceptions of marital entity and joint tenancy, it brought the latter to a climax. The spouses were properly neither joint tenants, nor tenants in common, for husband and wife being considered as one person they could not hold the estate by moieties as joint tenants, *per tout et per my,* but both were seised of the entirety, *per tout et non per my.* The consequence of this was a union of husband and wife in the estate so that neither could dispose of any part without the assent of the other and the whole remained to the survivor.

But the husband was entitled during coverture to the full control and benefits of the property held by entirety. This right was not derived from the nature of the estate but from the general principle

of common-law vesting of the wife's property in the husband. Not only was the husband's right to rents and profits during their joint lives subject to execution, but he could convey the property, so as to divest the wife of possession during his life and, in case he survived her, to vest in the grantee an absolute estate.[1]

The Married Woman's Property Statutes [2] have changed the common-law principles of marital unity so that the husband cannot now assert an exclusive right to the rents and profits or divest the wife of her share directly by conveyance or indirectly by execution.[3] Although it is said that no technical changes have been made in the estate by entirety, the results are different. Now each is entitled to the enjoyment and benefits of the whole and neither has a separate estate therein which may be subjected to a conveyance or execution.[4] These are obvious advantages, some of which can be attained by no other form of tenancy. They are frequently the cause or motive of creating the entirety. The reason for this is no longer merely the fictional unity of husband and wife. The interest in family solidarity retains some influence upon the institution. It is available only to husband and wife.[5] It is a convenient mode of protecting a surviving spouse from inconvenient administration of the decedent's estate and from the other's improvident debts. It is in that protection the estate finds its peculiar and justifiable function. Consistently with this, the rights of each spouse are regarded as equal to the other's and superior to the rights of persons who claim through the other spouse. Each has the right to receive the property at the death of the other clear of the latter's attempt to encumber it or subjection to payment of his obligations.[6] Notwithstanding the legal formulation that each is seised of the entire estate, the fact is that each has only a contingent possibility of ever enjoying it exclusively. Whether one or the other does so in fact depends altogether upon which is the survivor. The limitations on alienation and encumbrance are imposed in order to protect the rights of the other spouse, not to create a bulwark before the alienating one against his own improvidence. When he acquires full power over the property by survivorship he may do as he pleases with it. His protection ends when the spouse dies and there is no longer need to hold off creditors in her behalf. The rule of inalienability therefore is not one founded in protection of the

---

[1] See In re Brown, D.C.W.D.Ky. 1932, 60 F.2d 269; Davis v. Clark, 1866, 26 Ind. 424, 89 Am.Dec. 471; Hall v. Stephens, 1877, 65 Mo. 670, 27 Am.Rep. 302; Hiles v. Fisher, 1895, 144 N.Y. 306, 39 N.E. 337, 30 L.R.A. 305, 43 Am.St.Rep. 762; Bennett v. Child, 1865, 19 Wis. 362.

[2] D.C.Code (1940) tit. 30, c. 2.

[3] See, e. g., American Wholesale Corp. v. Aronstein, 1926, 56 App.D.C. 126, 10 F.2d 991; Hurd v. Hughes, 1920, 12 Del. Ch. 188, 109 A. 418; Annapolis Banking & Trust Co. v. Smith, 1933, 164 Md. 8, 164 A. 157; Licker v. Gluskin, 1929, 265 Mass. 403, 164 N.E. 613, 63 A.L.R. 231; Bruce v. Nicholson, 1891, 109 N.C. 202, 13 S.E. 790, 26 Am.St.Rep. 562; 2 Tiffany, Real Property (3d ed. 1939) § 435; Notes (1929) 43 Harv.L.Rev. 312; (1931) 29 Mich.L.Rev. 788; (1934) 89 A.L.R. 499; (1925) 35 A.L.R. 147; (1923) 27 A.L.R. 826.

Some jurisdictions hold that each has a separate interest subject to execution, the effect of which is to change the estate by entirety to an estate in common during their joint lives with the right of survivorship. See, e. g., Moore v. Denson, 1924, 167 Ark. 134, 268 S.W. 609; Ganoe v. Ohmart, 1927, 121 Or. 116, 254 P.

203; Bilder v. Robinson, 1907, 73 N.J. Eq. 169, 67 A. 828; Hiles v. Fisher, 1895, 144 N.Y. 306, 39 N.E. 337, 30 L.R. A. 305, 43 Am.St.Rep. 762.

The estate is of course subject to joint debts. Phillips v. Krakower, 4 Cir., 1931, 46 F.2d 764; Stanley v. Powers, 1936, 123 Fla. 359, 166 So. 843; Martin v. Lewis, 1924, 187 N.C. 473, 122 S.E. 180, 35 A.L.R. 144; Union Nat'l Bank v. Finley, 1913, 180 Ind. 470, 103 N.E. 110; Sanford v. Bertrau, 1918, 204 Mich. 244, 169 N.W. 880; cf. Ades v. Caplan, 1918, 132 Md. 66, 103 A. 94, L. R.A.1918D, 276.

[4] Ibid.

[5] Madden, Persons and Domestic Relations (1931) 125.

[6] The accretion to sole ownership is subject to taxation. Revenue Code § 811 (e); Tyler v. United States, 1930, 281 U.S. 497, 504, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758; 44 Harv.L.Rev. 130; Lang v. Commissioner of Internal Revenue, 1933, 289 U.S. 109, 53 S.Ct. 534, 77 L.Ed. 1066; In re Weiden's Estate, 1933, 263 N.Y. 107, 188 N.E. 270, reversing, 1932, 144 Misc. 854, 259 N.Y.S. 573; 1 Paul, Federal Estate and Gift Taxation (1942) c. 8.

surviving spouse against his or her own creditors. It is one of protection against creditors of the first decedent spouse.

■ Prior to the death of one it is always problematical which will survive. Each, technically seised of all, has an inchoate possibility of actually receiving all. The possibility is real and valuable, though uncertain. Mere possibilities are inalienable in the common-law system of estates. But this one is peculiar in being coupled, in legal theory, with a presently vested estate. This fact, coupled with the idea that inalienability in general is for the protection of the other spouse, raises the question whether a devise made by one spouse while the estate continues is wholly void or inoperative or may have the effect of a valid devise, effective if the other spouse dies first. Concededly, neither a conveyance nor a devise by one could become effective if the other should survive.[7] Nor could there be an attachment or levy against the former under judicial process.[8] But beyond this there is no necessity in protecting the other spouse to prevent the survivor's conveyance, or devise, or an attachment or levy against him, from becoming effective.[9] To do this would make the tenancy a protection against one's own improvidence, not merely against that of the spouse. We see no valid reason, from the viewpoint of protecting one spouse or the other, for not giving effect to the will of either disposing of the property, when the other dies first and the will remains unchanged and unrepublished until the death of the testator or testatrix.[10] To do this can impair in no way the rights of either spouse acquired by virtue of the tenancy.

■ It is true as appellant points out that before the Wills Act of 1837 and the after-acquired property statutes the testator could not devise realty which he did not own at the time he made his will. This was on the theory that a devise of realty took effect on the date of the execution of the will.[11] The statement, upon which appellant relies, "that the will speaks as of the date of execution, not of the date of death," is now merely a principle of construction. The date of execution fixes the time and circumstances for reference in ascertaining the intention of the testator.[12] So far as this is merely a rule of construction, it cannot overcome the testator's clearly expressed intention. So far as it formerly applied to exclude after-acquired property from the effect of the will, Section 45 has overruled it. We do not understand it to be a rule of law in the sense that it renders property incapable of being devised. On the contrary, the will is effective as of the date of death.[13] In

---

[7] See Alsop v. Fedarwisch, 1896, 9 App. D.C. 408; Young v. Biehl, 1906, 166 Ind. 357, 77 N.E. 406; Chaplin v. Leapley, 1905, 35 Ind.App. 511, 74 N.E. 546; Stieff v. Millikin, 1932, 162 Md. 245, 159 A. 599; Ashbaugh v. Ashbaugh, 1918, 273 Mo. 353, 201 S.W. 72; Randolph v. Edwards, 1926, 191 N.C. 334, 132 S.E. 17.

[8] 2 Tiffany, Real Property (3d ed. 1939) §§ 435, 436.

[9] Compare American Wholesale Corp. v. Aronstein, 1926, 56 App.D.C. 126, 10 F. 2d 991, with Hoffmann v. Newell, 1932, 249 Ky. 270, 60 S.W.2d 607, 89 A.L.R. 489; Raptes v. Cheros, 1927, 259 Mass. 37, 155 N.E. 787.

[10] For a leading case holding that the devise of a surviving joint tenant made before the death of the other joint tenant is valid, see Eckardt v. Osborne, 1930, 338 Ill. 611, 170 N.E. 774, 75 A.L.R. 509. See Jarman, Wills (7th ed. 1930) 65 [discussing the effect of The Wills Act of 1837 (7 Will. 4 & 1 Vict. c. 26, § 3) as follows: "If * * * the testator survives his companion in the tenancy, it is now unnecessary to inquire whether the devising joint tenant had become solely seised by survivorship at the period of the execution of the will; it is enough that he had acquired a devisable interest in the estate at the time of his decease."]; and 1 Page, Wills (3d ed. 1941) § 206, at 424.

Compare the following cases: Cox v. Bennett, [1868] L.R. 6 Eq. 422; Saxton v. Saxton, [1879] L.R. 13 Ch.Div. 359 (lease when will was executed; reversion acquired later); In re Lux's Estate, 1906, 149 Cal. 200, 85 P. 147 (at the time of execution testator was the owner of one half of certain community property; wife died after execution giving him full ownership without administration); Russell v. Chell, L.R. 19 Ch.Div. 432 (1882) (owned one-third interest in partnership at execution; entire interest at death); Hill v. Bacon, 1871, 106 Mass. 578; Carley v. Harper, 1916, 219 N.Y. 295, 114 N. E. 351, affirming, 1915, 166 App.Div. 473, 151 N.Y.S. 1056; Williams v. Brice, 1902, 201 Pa. 595, 51 A. 376 (testator owned a larger interest at death than he did at execution).

[11] 2 Page, Wills (3d ed. 1941) § 938.

[12] Ibid.

[13] Eckardt v. Osborne, 1930, 338 Ill. 611, 170 N.E. 774, 75 A.L.R. 509.

determining whether the property of a testator passes by his will there is a presumption that he did not intend to die intestate, which is greatly strengthened by words of general description in the residuary clause.[14] If the property or interest is devisable at the time of the testator's death, and if the testator has indicated sufficiently in the legal sense his testamentary intention to dispose of it, the will is effective to pass the title to the devisee.[15] Here the intention of the testatrix to devise the property is clear. She owned the entire estate in fee simple when the will became effective. The interest was one she was capable of devising, subject only to the contingency that her death before her husband's would have caused the devise to fail. In that event she would not have been the owner vested with the right of transfer at the time of her death.

The judgment is affirmed.

STEPHENS, Associate Justice: I concur in the result for the reasons hereinafter stated. As I understand the facts the testatrix Mable Pryor took title to certain real property in the District of Columbia on January 18, 1926, as a tenant by entirety (per tout et non per my). When she executed her will, devising the residue of her estate, real, personal and mixed, to her brother, John Forrest, the appellee herein, her husband, Harry C. Pryor, was living. He died January 26, 1933, Mrs. Pryor died January 28, 1939, seized of the property in question. She had not republished her will. The local after-acquired property statute provides, so far as here pertinent:

"...any will executed after January 1, 1902, which shall by words of general import devise all the estate or all the real estate of the testator shall be deemed, taken, and held to operate as a valid devise of any real estate acquired by said testator after the execution of such will, unless it shall appear therefrom that it was not the intention of the testator to devise such after-acquired property. (Mar. 3, 1901, 31 Stat. 1433, ch. 854, § 1628; June 30, 1902, 32 Stat. 545, ch. 1329.) [D.C.Code (1940) § 19—205]

Except for this statute a will in the Dis-

trict of Columbia, as at common law, takes effect as to realty from the date of execution, not from the date of death. Cf. Crenshaw v. McCormick, 1902, 19 App.D.C. 494, 500; Bradford v. Matthews, 1896, 9 App.D.C. 438, 442; McAleer v. Schneider, 1894, 2 App.D.C. 461, 467.

It is contended by the appellant Mable Swales Fairclaw, who is a niece of Mrs. Pryor and who would, with the appellee, take the real property as an heir at law of Mrs. Pryor if she died intestate in respect of such property, that it was not, within the meaning of the statute just quoted, after-acquired property, and that therefore it did not pass by Mrs. Pryor's will.

A tenancy by entirety is a species of joint tenancy peculiar to the relationship of husband and wife, which can be created only by a conveyance to them during coverture. The principle of survivorship which is applicable to joint tenancies in persons other than husband and wife is applicable to tenancies by the entirety also. Once the estate is created and while it continues the husband and wife each have a concurrent interest in the whole, and therefore upon the death of one of them the whole remains to the survivor. During the joint lives of the husband and wife neither can definitively alienate or devise the estate. Upon the death of one such tenant, however, there remains to the survivor the interest in the whole which was acquired at the time of the conveyance, but also the survivor is then freed from the restriction against alienation or devisation which theretofore existed.[1] Tenancy by entirety is still recognized in the District of Columbia. Settle v. Settle, 1926, 56 App.D.C. 50, 8 F.2d 911, 43 A.L.R. 1079; Flaherty v. Columbus, 1914, 41 App.D.C. 525; Loughran v. Lemmon, 1901, 19 App. D.C. 141; cf. American Wholesale Corporation v. Aronstein, 1926, 56 App.D.C. 126, 10 F.2d 991; Alsop v. Fedarwisch, 1896, 9 App.D.C. 408, 415.

Since at the time Mrs. Pryor executed her will she was already as a tenant by entirety owner and seized of the real property, it cannot be said that the same was "after-acquired property" in the usual sense of property title to which has been taken after the execution of a will. But although

---

14 Presbrey v. Simpson, 1923, 53 App. D.C. 358, 290 F. 333; Kennedy v. Alexander, 1903, 21 App.D.C. 424.

15 See note 10 supra.

1 For a lucid discussion of joint tenancies, including tenancy by entirety, see "Introduction to the Law of Real Property," by Harry A. Bigelow, 1919, ch. 4.

she was when she executed the will owner and seized of the property, she was not then capable of making a definitive devise of it, her husband still being alive. There was therefore lacking in her interest in the property as a tenant by entirety complete control in the sense of unrestricted power to deal with the property. Such complete control was acquired by Mrs. Pryor only at the moment of her husband's death, and that addition to her interest was I think in a proper sense of the term property acquired after the execution of her will. That being true and it being plain upon the face of her will that Mrs. Pryor intended to devise real property, if any she had, I think the property in question passed by virtue of her will and that therefore the decision of the trial court in the appellee's favor was correct.