## Horsey's Estate

LADNER, J., auditing judge.—Testatrix died August 20, 1937, a widow; leaving a will and codicil upon which letters testamentary were granted August 25, 1937.

By the first item of her will testatrix provided as follows:

"I exercise the power of appointment under the will of my aunt, Eliza A. Leadbeater, and I personally give, devise and bequeath all my interest in her estate to the charities named by her, in her memory."

By the second item she provided as follows:

"I direct that the solitaire diamond ring which I received for life from Mrs. Edward R. Fell, shall be delivered to the eldest daughter of Robert Gratz Fell, in accordance with Mrs. Fell's will."

By the third item she directed the payment of her debts and funeral expenses.

By the fourth item she provided as follows:

"I give and bequeath to the Right Reverend Thomas J. Garland, Bishop of the Diocese of Pennsylvania, or his successors, my service of solid silver, including all the spoons and forks marked 'E. A. L.' to be melted down and used as a Communion Service and Alms Basin, as a memorial to my dear aunt, Eliza A. Leadbeater. The Bishop can use his own discretion as to the Church to which they are to be given by him. If the silver service is not in my possession at the time of my decease, I give the Bishop five hundred dollars for this purpose."

By the fifth, sixth and seventh items she made specific bequests and the following money bequests: Ten thousand to her sister, Mary May Cousland, for life, and she predeceased testatrix and died without issue; $5,000 to the endowment fund of St. Mary's Church in memory of her husband, William S. Horsey, and herself; $1,000 each to the Red Cross, the Morris Refuge for Animals, Harrison King; her cousin, Dorothy, wife of Edward Duer; her cousin, Bruce Atkinson, and her friend, Walter Willard; and $500 to Mrs. Mary Freeman, if living.

By the eighth item she directed that the "foregoing" should be paid clear of tax.

By the ninth item she gave to Woodlands Cemetery Company $500 for the care of the burial lot in said cemetery registered in the name of her aunt, Elizabeth A. Leadbeater.

By the tenth item she gave the residue of her estate in equal shares to the Episcopal Hospital and the Philadelphia Home for Incurables to endow free beds in memory of her husband, William S. Horsey, and herself.

Testatrix did not marry, nor were any children born or adopted, after the execution of the will and codicil.

As heretofore noted and as set forth in the petition for distribution, Mary May Cousland, sister, predeceased testatrix. It is also noted in the petition that Bruce Atkinson, cousin, predeceased testatrix and his legacy therefore lapsed. . . .

The Cousland-Leadbeater fund charged upon the accountants in the net sum of $28,493.16 is claimed as a specific legacy under the will of Anna Maria Horsey by the three charities to which Mrs. Horsey appointed the Horsey-Leadbeater fund and to whom the Horsey-Leadbeater fund is awarded in my adjudication dealing with that fund. For convenience, I will refer to them as the Nashotah group. The residuary legatees under the will of Anna Maria Horsey, the Episcopal Hospital and The Philadelphia Home for Incurables resist this claim and ask for this fund as part of Mrs. Horsey's residuary estate, together with the income thereon.

This fund consists of that part of the estate of Eliza A. Leadbeater over which Mary May Cousland had power of appointment. She did not specifically exercise the power, but gave her residuary estate to Anna Maria Horsey, her sister. By virtue of section 11 of the Wills Act, this gift operated as an exercise of the power, and upon the audit of the account of the executor of Mary May Cousland, this Cousland-Leadbeater fund was awarded to the executor of Anna Maria Horsey. See my adjudication of June 23, 1942 (Estate of Mary May Cousland, no. 2193 of 1938). It has been charged upon the accountant.

Any additional income on the Cousland-Leadbeater fund will follow the disposition of the principal fund.

The basis of the claim as now asserted by the Nashotah group is, in effect, that the appointive clause in

Mrs. Horsey's will, to wit, "I exercise the power of appointment under the will of my aunt, Eliza A. Leadbeater, and I personally give, devise and bequeath all my interest in her estate to the charities named by her, in her memory" accomplishes a dual purpose and is to be construed on the one hand as an exercise of the power of appointment with respect to the share of the Leadbeater fund which Mrs. Horsey actually appointed to the three charities (Nashotah group)—her own one half—and on the other hand as a *specific bequest* of the other one half of the Leadbeater fund which Mrs. Horsey inherited through her sister, Miss Cousland, to these same charities.

Comprehensive and illuminating briefs have been furnished by counsel on both sides. The learned counsel for the Nashotah House concedes "a diligent search of the authorities has failed to disclose any which are really helpful in the construction of the will now before the court". Notwithstanding that the question is but the construction of the first item of Mrs. Horsey's will, the appointive clause, a great deal of stress is laid upon extrinsic facts and circumstances, to wit, that Mrs. Horsey, who was the surviving trustee under the Leadbeater will, retained the assets of that trust intact and did not divide them following her sister's death on September 28, 1934; that during the following summer she placed these assets—still intact—with The Pennsylvania Company for Insurances on Lives and Granting Annuities, as her agent, and thereafter continued to keep the Leadbeater assets separate and apart from her individually owned property; that following the death of Miss Cousland all of the income from the Leadbeater assets was paid over to Mrs. Horsey and returned by her as her income under the Federal income tax laws; and this was an unequivocal manifestation of Mrs. Horsey's understanding that the Cousland half of the Leadbeater estate had become hers, for the

Leadbeater will contained no provisions for the continuance of any trust as to the Cousland half of the Leadbeater Estate after Miss Cousland's death, and Mrs. Horsey could only have appropriated the income from the Cousland portion of the Leadbeater estate because she realized that such portion was hers to do with as she wished.

It is, of course, true that a will is to be construed with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of a testator, unless a contrary intention shall appear by the will (section 9 of Wills Act of 1917). But the residuary clause of Mrs. Horsey's will which would effectively carry and pass the share of the Leadbeater estate which she inherited from and through her sister, Miss Cousland, is just as dominant as the appointive clause (first item) which expressly exercises "the power of appointment under the will of my aunt, Eliza A. Leadbeater . . ." For all that the appointive clause could speak, was that as to which there was a survival of a right to appoint, to wit, her one half of the fund. This would be true had Mrs. Horsey predeceased her sister, Miss Cousland, or had Miss Cousland in such case as the survivor of the appointees made no appointment at all of her half or permitted her 1930 will to stand as written, since upon a failure of or an ineffective appointment donor's will would speak for the disposition of such share in default of appointment. Why then should any dual purpose or manifest intent be gathered from the appointive clause in Mrs. Horsey's will simply because the order of deaths of these two donees of the power occurred as they did, and thus turn what on its face is an express exercise of a power of appointment into both an exercise of a power and a separate and distinct gift. It would be but mere conjecture and speculation to say that Mrs. Horsey, whose will ante-

dated her sister's will (although a codicil which changed the appointment of executors and ratified the will in all other respects was executed approximately six months after Miss Cousland's will), intended by the first item of her will in exercising her power and giving "all my interest in her (Eliza A. Leadbeater's) estate to the charities named by her (Eliza A. Leadbeater) in her memory" to dispose of and embrace not only the share which she could appoint but what she might inherit through Miss Cousland. Clearly, if Mrs. Horsey's will disposing of her interest in the Leadbeater estate is construed solely in the light of the time of its execution, it disposes only of her appointive share of such estate; and even, as aforesaid, if construed to take effect and speak as of her death for her interest in the Leadbeater estate, it still, in the opinion of the auditing judge, speaks for only her appointive share. To uphold the contention of the charities who are the appointees under the Horsey will, the first item of that will would have to be rewritten to read: "I exercise the power of appointment under the will of my aunt, Eliza A. Leadbeater, and I personally, give, devise and bequeath all my interest in her estate (*and all the interest in that estate which I might inherit through my sister, Mary A. Cousland*) to the charities named by her, in her memory."

The one and only case cited on behalf of the Nashotah group is Williams v. Brice, 201 Pa. 595 (1902), and the auditing judge does not deem that controlling here. In that case decedent gave "all the residue of my real estate consisting of the (1/6) one-sixth part of the following properties, inherited from my father . . ." It was held that this clause was sufficient to pass title not only to the undivided one sixth share in the father's real estate which testator had owned at the execution of his will, but also additional interests in his father's real estate which testator had subsequently acquired, both by inheritance and by purchase.

Counsel for the residuary legatees under Mrs. Horsey's will, on the other hand, cite numerous cases to the effect that the rule making a will to speak as though executed immediately before the death of testator, relates to the effect and operation of the instrument rather than to its construction, and, as regards the intention of testator, the will is to be construed as of the date of the execution: See Miller's Estate, 323 Pa. 9 and Peterson's Estate, 242 Pa. 330, 338. A case closely parallel to the present case is Baker and Wheeler's Appeal, 115 Pa. 590 ,where the testator provided: "I leave and bequeath all my property (as stated in my father's will) to my wife Mary S. Wheeler." He had property of his own and he had a power of appointment under his father's will. It was held that only the property over which he had power of appointment passed under this bequest, and that there was an intestacy as to his own property. The dispositive words, "I leave and bequeath all my property", if they stood alone, would undoubtedly have passed testator's own property and would operate as an exercise of the power under the statute; but the added words, "(as stated in my father's will)" control and limit what goes before. So in the present case the reference to the Leadbeater power of appointment limits what might otherwise be a disposition of the Cousland half of the Leadbeater estate which, by the time of Mrs. Horsey's death, had become her own property. The claim of the Nashotah group for the one half share of the Leadbeater fund which Miss Cousland appointed to his sister, Mrs. Horsey, is dismissed.

The balance, composed as indicated in the account of the Horsey individual estate, as modified by the supplement thereto filed at bar, and by this adjudication, is awarded equally to the Hospital of the Protestant Episcopal Church in Philadelphia (named in the will as Episcopal Hospital) and to The Philadelphia Home

for Incurables, subject to Pennsylvania inheritance tax and interest thereon in the sum of $7,059.88, to endow free beds therein in memory of Anna M. Horsey and William S. Horsey, her husband. . . .

*Shields, Clark, Brown & McCown; Duane, Morris & Heckscher*, for exceptants.

*Joseph Whetstone, Robert W. Archbald, Jr.*, contra.

Before Sinkler, Klein, Bolger, Ladner and Hunter, JJ.

BOLGER, J., January 3, 1947.—We are convinced that the auditing judge reached the correct conclusion in his well-reasoned adjudication.

The auditing judge has scanned this will from its four corners: Parkin Estate, 157 Pa. Superior Ct. 476; Elkins' Estate, 339 Pa. 193. He has significantly pointed to the complete disposition in numbered paragraphs of testatrix's own estate, following her exercise in the first paragraph of her will of the power of appointment she possessed in her aunt's estate. We believe her intention is clear and we, therefore, do not stand in need of applying rules of construction: Haydon's Estate, 334 Pa. 403.

When the instrument is given its natural meaning, the problem raised by the exceptions is greatly simplified. Testatrix first "points up" the subject matter of the disputed paragraph: "I exercise the power of appointment under the will of my aunt, Eliza A. Leadbeater . . ." Clearly she intended thereby to restrict its operation to the exercise of the power reserved to her by her aunt's will and not to impinge upon the dispositive provisions respecting her own estate. This phrase is conjoined by the word "and" with the subsequent phrase "I personally give, devise and bequeath all my interest in her estate to the charities named by her, in her memory". This latter phrase can only refer to the "interest" acquired directly by the testa-

trix under the Leadbeater will. It is the only interest that fits the description: Lusk's Estate, 336 Pa. 465. That is so whether we regard the time of the application to be the date of the execution of the will or immediately preceding testatrix's death. To detach the power of appointment from "all my interest in her estate" and extend the latter to include the Cousland share, we would have to fuse or blend the two portions or interests. Testatrix did not do it and, therefore, we cannot do it. The Coulter interest was not a part of testatrix's interest during Miss Cousland's lifetime nor did it become so at the latter's death. When Miss Cousland died, her share became the absolute estate of testatrix irrespective of the form in which the latter as trustee retained it. It became amenable to her creditors, and was taxable as part of her estate, and was susceptible to her unqualified alienation during her life and by devolution under her will. Had she failed to dispose of it by will, it would have descended to her next of kin under the intestate laws, at her death. On the other hand, testatrix's power of appointment was a personal right, not property. The property subject to it was not liable for her debts during her life or after her death nor was it taxable as part of her estate unless she blended it with her own. Had she failed to bequeath it, her creditors or heirs would have acquired no interest because it would have devolved in accordance with the provisions of donor's will. This analysis makes it apparent why a plain expression of intent or clear implication to include the Cousland interest must be found in order to sustain exceptants' contention: Stannert's Estate, 339 Pa. 439; Jackson's Estate, 337 Pa. 561.

Baker and Wheeler's Appeal, 115 Pa. 590, cited in the adjudication, represents a stronger argument than exceptants' and is the nearest case in point. There testator provided: "I leave and bequeath all my prop-

erty (as stated in my father's will) to my wife." The court held that the phrase "as stated in my father's will" was not merely descriptive of his estate, but limited the gift to the power of appointment under the father's will.

Exceptants rely upon Williams v. Brice, 201 Pa. 595, wherein testator gave all the residue of his real estate described as a one-sixth interest "inherited from my father". After the execution of the will, he acquired additional interests by inheritance and by purchase. The court awarded the whole to devisee, stating that the description of the source of the real estate did not limit the prior gift of the whole residue. That is a different question than is posed by the instant case. There all of the real estate actually belonged to testator and the subsequent description was held not to cut down the size of the gift. Here we are dealing with two different classifications of property as was the situation in Baker and Wheeler's Estate, supra. But the most important difference is the presence here of the first clause expressing the intent to exercise the power of appointment. Were it entirely omitted or were it inverted so as to be the final phrase of the clause, we would probably have a different case, one nearer to Williams v. Brice, supra. But, as the auditing judge has held, this is the dominant phrase, and the disposing clause following it must be read solely in the light of its purpose; there is no express language or clear implication to the contrary.

In conclusion, we do not believe testatrix intended to prefer the charities mentioned in her aunt's will in the distribution of her own estate (even though this part of it came down from the aunt originally) to the charities she expressly favors in her own residuary clause.

Accordingly, the exceptions are dismissed and the adjudication confirmed absolutely.