BARBARA S. FINNEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent JOHN W. FINNEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Finney v. Commissioner
Docket Nos. 6943-74, 7556-74.
United States Tax Court
T.C. Memo 1976-329; 1976 Tax Ct. Memo LEXIS 72; 35 T.C.M. (CCH) 1504; T.C.M. (RIA) 760329; October 28, 1976, Filed Barbara S. Finney, pro se in docket No. 6943-74. John W. Finney, pro se in docket No. 7556-74. Frank J. Coyne, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: In these consolidated cases, the respondent determined the following deficiencies in petitioners' Federal income taxes for the year 1971: Docket No.
Deficiency
6943-74
$643.49
7556-74
779.89
The following issues still require consideration: (1) Whether the distributions made with respect to securities and savings accounts, all of which were owned by the petitioners as joint tenants with right of survivorship, are taxable solely to the spouse who actually received the amounts in question; *74 (2) whether one spouse is entitled to deduct all of the real property taxes and mortgage interest arising from a parcel held by the two spouses as tenants by the entirety; (3) whether one spouse is entitled to deduct all of the loss attributable to an interest in a partnership owned by the spouses as tenants by the entirety; and (4) whether section 143(b) [1] establishes a classification of marital status that is violative of the due process clause of the Fifth Amendment. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners were legally married during the taxable year in question. Each petitioner filed a separate individual income tax return on the cash basis for the year 1971 with the district director of internal revenue, Baltimore, Md. At all relevant times; the petitioners resided in Washington, D.C. Although Barbara and John Finney were legally married during the taxable year 1971, they were voluntarily separated *75 from March 9, 1970 until November 9, 1972. On November 9, 1972, the couple was legally divorced in the District of Columbia. Prior to that time, John Finney (hereinafter referred to as John) had made voluntary payments for the support of Barbara Finney (hereinafter referred to as Barbara) and the two children of their marriage. These two children resided with Barbara during the taxable year 1971. During the taxable year 1971, the petitioners were joint owners of the following types of properties: 1. Common stocks and mutual fund shares as joint tenants with right of survivorship. 2. Four savings accounts and one checking account as joint tenants with right of survivorship. 3. One parcel of real property used as a residence by Barbara and the children (hereinafter referred to as the Dent Street property) as tenants by the entirety. 4. An undivided one-third interest in a partnership as tenants by the entirety. Dividends and capital gains distributions were made with respect to the stock and mutual fund shares held by the petitioners during the taxable year 1971. These payments were received by Barbara, who either deposited them in a joint savings account or invested *76 them in additional securities in the joint names of Barbara and John. Such distributions amounted to $667.51 in dividends and $335.56 in capital gains distributions for the taxable year in question. Interest on the amounts deposited in the joint savings accounts was credited to those accounts. In the taxable year 1971 such interest amounted to $43.88. At all times John had unrestricted rights to withdraw funds from all of the joint accounts. So far as relevant for tax purposes, the expenditures for the Dent Street property consisted of payments of real estate taxes and interest on the mortgage. Barbara and John were jointly liable on the mortgage. During 1971, payments were made on the mortgage, including $638.04 interest. The payments were made by check or checks of Barbara. The parties have stipulated that the funds used in making these payments were supplied by John. [2]
The real property taxes were payable by "John W. & B.S. Finney." The payment of $532.01 due for such taxes was made on March 30, 1971, by a check drawn by Barbara on a checking account *77 solely in her own name. As of March 27, 1971, that account had a balance of $398.48. In order to cover the check, Barbara deposited $266 into the account on March 31, 1971. This $266 was directly traceable to a joint account. [3]
The one unit in the partnership owned by the Finneys consisted of an undivided one-third interest in a tract of real property located in Madison County, Virginia. The partnership agreement, dated November 7, 1967, stated that it would be governed by the laws of the state of Virginia and would be recorded among the land records of Madison County. The agreement provided that "each unit * * * shall for all purposes hereunder be represented by one member of each Couple" and that all costs shall be shared equally among the couples. The agreement was silent as to allocation of costs between the spouses of each couple. During the taxable year 1971, all payments to the partnership were made by John. The partnership suffered a loss during 1971, of which $2,548.94 was allocable to the Finney unit. *78 OPINION Inclusions in Income
In the taxable year 1971, the stock, mutual fund shares, and savings accounts owned jointly by the Finneys produced income of $1,046.95. Taxation of income from jointly held property is determined in accordance with the state law rule for deciding who is entitled to the income from the property so held. Elsie S. Bour,23 T.C. 237 (1954). Under the applicable law of the District of Columbia, the domicile of the Finneys throughout 1971, neither the husband nor the wife is entitled to the enjoyment nor the benefits of the entire jointly held property to the exclusion of the other and each has an equal right to enjoy these properties. Fairclaw v. Forrest,130 F.2d 829 (D.C. Cir. 1942). Under such circumstances, since each spouse has an equal right to the income from the property, the usual rule is that one-half of the income from the properties is properly taxable to each spouse. Frederick J. Haynes,7 B.T.A. 465, 467 (1927). Cf. Stewart v. Commissioner,95 F.2d 821 (5th Cir. 1938), affg. 35 B.T.A. 406 (1937). John asserts that he need not include any portion *79 of the distributions in respect of the stock or mutual fund shares or the interest on the savings accounts in his taxable income on the ground that he never actually received any portion of these funds. Barbara takes the position that she need include only 50 percent of these amounts in her taxable income, since she had a right to only that portion of the property and income produced therefrom. As a cash basis taxpayer, John is obligated to include in his gross income any amount which he received, whether actually or constructively, during the 1971 taxable year. Section 1.446-1(c)(1), Income Tax Regs.Section 1.451-2(a), Income Tax Regs., states that -- [income] although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control is subject to substantial limitations or restrictions. The interest paid on the joint *80 savings accounts was credited to those accounts in 1971. At all times during that year, John had an unlimited right to withdraw funds from these accounts. Similarly, the 1971 distributions with respect to the stock and mutual fund shares were made to both the Finneys; the proceeds from these distributions were either reinvested in securities which were placed in the joint names of John and Barbara or were deposited in the joint savings account. Again, John had an unrestricted right to obtain these funds. The fact that Barbara had control over the funds or that she used them is insufficient reason for not taxing John on his one-half share. Morgan v. Finnegan,182 F.2d 649 (8th Cir. 1950), affg. 87 F. Supp. 274 (E.D. Mo. 1949). See Elsie S. Bour,supra at 240-241. Nor is it material that he may have been ignorant of the distribution of the income. Cf. Don H. Blanks, a Memorandum Opinion of this Court dated Dec. 23, 1947. Deductions for Mortgage Interest and Real Estate Taxes
John and Mary owned the Dent Street property as tenants by the entirety. They were jointly liable for the mortgage on this property. During *81 the taxable year 1971, $638.04 in interest payments on the mortgage was paid by a check or checks issued by Barbara. Real estate taxes in the amount of $532.01 were assessed and paid on the Dent Street property during the taxable year 1971. Payment was made by a check drawn by Barbara. Barbara claims that she is entitled to deduct 50 percent of the foregoing amounts. John claims that he is entitled to deduct them in full. Under normal circumstances, a deduction in respect of payment of a joint obligation is allowable to whichever of the parties liable thereon makes the payment out of his own funds. Al Jolson,3 T.C. 1184, 1186 (1944); F.C. Nicodemus, Jr.,26 B.T.A. 125 (1932); William R. Tracy,25 B.T.A. 1055, 1061 (1932), revd. on another issue 70 F.2d 93 (6th Cir. 1934). See Mark B. Higgins,16 T.C. 140, 143-144 (1951). See also Rev. Rul. 71-268, 1971-1 C.B. 58. The authorities are sparse, however, where payment is made by one such party out of funds provided by the other. In Edward C. Kohlsaat,40 B.T.A. 528 (1939), the taxpayer deeded property to his wife as part *82 of a divorce settlement but remained primarily liable on the mortgage debt, which the wife did not assume. Pursuant to a separation agreement, he was required to, and did, provide her with funds for the express purpose of paying the mortgage interest. Under these circumstances, the Court held that the wife was acting merely as the husband's agent in respect of the payment of the interest and that he was entitled to the deduction therefor. In Mark B. Higgins,supra, the Court held that the taxpayer husband was only entitled to deduct one-half of the interest paid in respect of a mortgage on property held by him and his wife as tenants by the entireties. In so holding, the Court emphasized that the payments were not made "from separate funds". See 16 T.C. at 143. Compare Deininger v. Commissioner,313 F.2d 221, 224 (4th Cir. 1963), revg. on other issues T.C. Memo. 1961-212; Rev. Rul. 62-38, 1962-1 C.B. 15. Finally, in Ernest W. Clemens,8 T.C. 121 (1947), the Court denied a deduction for the full amount of medical expenses to a taxpayer, subject to community property laws, on the ground that *83 there was insufficient evidence to show that the expenses were not paid out of community funds. From the foregoing, we glean that, in situations such as are involved herein, the test of who is entitled to the deduction turns upon proof that the funds of the taxpayer claiming the deduction were used to make the payment and that there is sufficient evidence to trace the payment directly to such funds. The taxpayer, of course, has the burden of proving that he has met the test.Rule 142, Rules of Practice and Procedure of this Court. Turning to the facts herein, John and Barbara both stipulated with respondent that the funds used to make the payments on the mortgage on the Dent Street property were supplied by John. While there concededly was not such earmarking of the funds as was present in Edward C. Kohlsaat,supra, we think this stipulation is sufficient to satisfy John's burden of proof as to the tracing of the interest payments. Cf. Alice G. K. Kleberg,43 B.T.A. 277, 295 (1941). Accordingly, we hold that he is entitled to the deduction for the full amount of the interest paid and that Barbara is not entitled to any deduction therefor. *84 [4]
As to the real estate taxes, we think that the situation is different. We are unable to determine, on the record before us, that the funds used to make the payment of such taxes came exclusively from John. See p. 5, supra. Accordingly, we hold that the usual rule applies and that John and Barbara are each entitled to deduct one-half the amount involved. Cf. Ernest W. Clemens,supra.
Deduction of the Partnership Loss
During the taxable year 1971, John and Barbara held an undivided one-third interest in a partnership as tenants by the entirety. The loss allocable to the Finneys from this partnership interest amounted to $2,548.94. In 1971, John made all the payments to the partnership. [5]
John argues that he is entitled to deduct the full amount of partnership loss allocable to the Finneys in 1971, since *85 he made all of the payments to the partnership during that year. Barbara contends that she is entitled to deduct one-half of the losses as a tenant by the entirety. For purposes of income tax, the general rule as to the sharing of losses from property held under a tenancy by the entirety is the same as that relating to the division of income.See Elsie S. Bour,supra;Mark B. Higgins,supra;Frederick J. Haynes,supra;Fairclaw v. Forrest,supra. This is the case even though one of the tenants by the entirety supplies the funds to cover the losses. Oren C. White,18 T.C. 385 (1952). Moreover, we note that, although we have assumed that John made all the payments to the partnership during 1971 (see footnote 5, supra), we have no evidence as to who made the payments to the partnership subsequent to its formation in 1967 and prior to 1971. In view of the foregoing, John's deduction is limited to one-half of the partnership loss. By the same token, Barbara is entitled to deduct the other half of the partnership loss. John also claims that, if he was not entitled to deduct the *86 entire loss, he should be entitled to deduct that amount representing such deductible items as interest on a mortgage and real estate taxes paid by the partnership. However, the only evidence introduced by John to support this claim is a vague assertion "that much of the loss on this partnership * * * reflects mortgage interest and real estate taxes." Such evidence is insufficient to alter our conclusion. See Oren C. White,supra at 387. Head of Household
John's final argument is that section 143(b), as it is applied through section 2(c) to deny him tax status as a head of household, creates an arbitrary classification violative of the due process clause of the Fifth Amendment.
Section 143(b) provides that if-- (1) an individual who is married (within the meaning of subsection (a)) and who files a separate return maintains as his home a household which constitutes for more than one-half of the taxable year the principal place of abode of a dependent (A) who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the individual, and (B) with respect to whom such individual is entitled to a deduction for the taxable year under *87 section 151, (2) such individual furnishes over half of the cost of maintaining such household during the taxable year, and (3) during the entire taxable year such individual's spouse is not a member of such household, such individual shall not be considered as married. John's children maintained their principal place of abode with Barbara throughout 1971. Thus, John can not be treated as single under section 143(b) nor section 2(c). John's position is that the requirement that a parent physically reside with his children creates an arbitrary classification. This Court rejected a constitutional challenge to the identical requirement of section 2(b). John A. Bayless,61 T.C. 394 (1973). John has not persuaded us that our prior decision was incorrect, and we reject this challenge to section 143(b). * * * * *
This case epitomizes the difficulties in which taxpayers often find themselves when a marital relationship turns sour and one or the other of the parties thereto finds himself or herself caught in the web of tax consequences flowing from the more equable period of such relationship or the rules applicable during the unravelling period. More often *88 than not, the trial of the tax case which ensues reflects the rancor and antagonisms that are inevitably involved.Although it is not always easy to do so, the Court must avoid the not unnatural human instincts to look behind the tax facts and to allow its approach to decision to be influenced by its conception as to who is "to blame" for the marital discord.We have steadfastly adhered to the requisite judicial neutrality in this regard as far as these cases are concerned. Decisions will be entered under Rule 155.* Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in question.↩
2. The account or accounts against which Barbara's check or checks were drawn is not revealed by the record.↩
3. It is not clear from the record whether this account was funded solely from John's support payments or from the dividends which Barbara received as well.↩
4. We note that, had the Dent Street property been income-producing, a different result might be indicated. Cf. Oren C. White,18 T.C. 385↩ (1952).
5. The record is unclear as to whether John's payments equaled or exceeded the amount of the loss but, for purposes of our decision herein, we assume that they did.↩